The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

**Gary Michael GIBSON, Defendant-Appellant.**

**No. 79SA125.**

Supreme Court of Colorado, En Banc.

Feb. 2, 1981.

Rehearing Denied Feb. 23, 1981.

---

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Kathleen M. Bowers, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, State Public Defender, Joseph P. McMahon, Jr., Sp. Deputy State Public Defender, Denver, for defendant-appellant.

ERICKSON, Justice.

The defendant, Gary Michael Gibson, appeals his conviction for second-degree assault. Section 18–3–203(1)(f), C.R.S. 1973 (1978 Repl. Vol. 8). He asserts that the trial court erred in refusing to instruct the jury as to his good faith, but his unreasonable belief that he acted in self-defense. He also claims that the jury should have been instructed as to the lesser offense of third-degree assault. We affirm.

On the date of the assault, Gibson was an inmate at the Colorado State Penitentiary.

The incident which formed the basis of the assault centered on an attempt by prison guards to move Gibson to a new cell. When Gibson refused to move to his new cell, two guards grabbed his arms in an attempt to force him out of the cell. Gibson reacted by kicking a guard in the groin and inflicting serious injury. Gibson claims, however, that the guards' prior threats and the fact that he had filed several *pro se* legal actions against prison officials, caused him to believe that the guards intended to assault him and not to merely move him from one cell to another.

An information was filed charging Gibson with second-degree assault.[1] Second-degree assault is a class 4 felony punishable by a maximum sentence of ten years.[2] The information also charged Gibson under sentencing alternatives set forth in section 16–11–101(1)(d), C.R.S. 1973 (1978 Repl. Vol. 8) to enhance possible punishment.[3]

Gibson contended that he was entitled to an instruction on the affirmative defense of self-defense. As a result, the court gave the jury the following instruction on self-defense:

"It is an affirmative defense to the crime of Assault in the Second Degree that the defendant used the physical force upon another person

(1) In order to defend himself from what he reasonably believed to be the use or imminent use of unlawful physical force by others against him, and

(2) He used a degree of force which he reasonably believed to be necessary for that purpose."

\*　　\*　　\*　　\*　　\*　　\*

"In passing upon the question as to whether or not the defendant had reasonable grounds for believing that there was imminent danger that the complainant and others were about to do him bodily harm, you should determine this question from the standpoint of the defendant at the time he acted, under his surrounding at the particular instant of time, and determine whether or not he acted as a reasonable and prudent person would

1. Section 18–3–203(1)(f), C.R.S. 1973 (1978 Repl. Vol. 8), provides:

"(1) A person commits the crime of assault in the second degree if:

(f) While lawfully confined or in custody, he violently applies physical force against the person of a peace officer or fireman engaged in the performance of his duties or while lawfully confined or in custody as a result of being charged with or convicted of a crime, he violently applies physical force against a person engaged in the performance of his duties while employed by or under contract with a detention facility, as defined in section 18–8–203(3), and the person committing the offense knows or reasonably should know that the victim is a peace officer or fireman engaged in the performance of his duties or a person engaged in the performance of his duties while employed by or under contract with a detention facility. A sentence imposed pursuant to this paragraph (f) shall be mandatory, and the court shall not grant probation or a suspended sentence, in whole or in part, and shall run consecutively with any sentences being served by the offender...."

2. *See* Section 18–3–203(2) and section 18–1–105(1), C.R.S. 1973 (1978 Repl. Vol. 8).

3. Section 16–11–101(1)(d), C.R.S. 1973 (1978 Repl. Vol. 8), provides:

"(1) Within the limitations of the penalties provided by the classification of the offense of which a person is found guilty, and subject to the provisions of this title, the trial court has the following alternatives in entering judgment imposing a sentence:

(d) A person who has been previously convicted of a felony in this state or in another jurisdiction, based upon an offense which occurred within five years prior to the date of the offense for which he is being sentenced, shall not be eligible for an indeterminate sentence, notwithstanding the institution to which he is sentenced; but no drug law conviction shall be counted as a prior felony conviction under this paragraph (d) unless the offense on which the prior felony conviction was based would be a felony if committed in this state at the time of the commission of the offense for which the person is being sentenced. If the offense for which he is being sentenced is a class 5 felony, the authorized minimum sentence shall not be less than one year imprisonment, and, if a class 4 felony, the authorized minimum sentence shall not be less than two years imprisonment. A person sentenced to a term of imprisonment at the Colorado state reformatory which is not indeterminate shall be entitled to the same time credits as if he were sentenced to a term of imprisonment at the state penitentiary, in accordance with the provisions of article 20 of title 27, C.R.S. 1973."

have acted under like circumstances. It is not enough that the defendant believed himself in danger, unless the facts and circumstances shown by the evidence and known to the defendant at the time, or by him then believed to be true, are such that you can say that as a reasonable person he had grounds for such belief."[4]

The jury was also given the following instruction on second-degree assault:

"A person commits the crime of 'assault in the second degree' if: While lawfully confined or in custody, he violently applies physical force against the person of a peace officer engaged in the performance of his duties, and the person committing the offense knows or reasonably should know that the victim is a peace officer engaged in the performance of his duties.

"The elements of 'assault in the second degree' are therefore:

(1) While lawfully confined or in custody

(2) With specific intent

(3) Violently applying physical force against a peace officer engaged in the performance of his duties and

(4) Knowing or reasonably should know the victim is a peace officer engaged in the performance of his duties.

"If, after considering all of the evidence, you find that the prosecution has established beyond a reasonable doubt that the defendant, Gary Michael Gibson acted in such a manner so as to satisfy all of the above elements at or about the date and place stated in the information, you should find the defendant guilty of assault in the second degree; if you do not so find, you should find the defendant not guilty of assault in the second degree."

The jury found Gibson guilty of second-degree assault and a sentence of two to ten years was imposed. *See* section 16–11–101(1)(d), C.R.S. 1973 (1978 Repl. Vol. 8).

### I.

Gibson relying on *People v. Bramlett*, 194 Colo. 205, 573 P.2d 94 (1977), *cert. denied*, 435 U.S. 956, 98 S.Ct. 1590, 55 L.Ed.2d 808 (1978), asserts that if he committed the assault with the good faith, but unreasonable belief that his actions were justified, the sentence imposed can be no greater than that which can be imposed under the criminally-negligent homicide statute. Section 18–3–105, C.R.S. 1973 (1978 Repl. Vol. 8).[5] Criminally-negligent homicide is a

---

**4.** Gibson also tendered an instruction which was rejected by the court that would have permitted the jury to consider whether he acted with a good faith, but unreasonable belief that he had the right of self-defense under the circumstances. Gibson's tendered instruction provided:

"If after consideration of all of the evidence in this case the jury is convinced beyond a reasonable doubt that the prosecutor has proven the guilt of the defendant as to the issue of self defense, the jury should find the defendant guilty of either Assault in the Second Degree or guilty of Assault in the Third Degree.

"The jury must then consider, however, whether the defendant acted in the good faith, but unreasonable, belief that a right to self defense existed in the circumstances then presented to him, and enter an appropriate finding in this regard in the space provided on the forms of verdict.

"If the jury finds that no right of self defense existed and that the defendant did not act in the good faith, but unreasonable belief that such right existed, it should so find.

"If the jury finds that no right of self defense existed, but that the defendant had a good faith belief that such right existed, although none was present, the jury should so find."

**5.** At the time that the incident in the instant case arose, section 18–3–105, C.R.S. 1973 (1978 Repl. Vol. 8), provided:

"(1) A person commits the crime of criminally negligent homicide if he causes the death of another person:

(a) By conduct amounting to criminal negligence; or

(b) Intentionally in the good faith but unreasonable belief that one or more grounds for a justification exists under sections 18–1–701 to 18–1–707.

"(2) Criminally negligent homicide is a class 1 misdemeanor."

H.B. 1654 (1977), Ch. 224, 1977 Colo.Sess. Laws 959, has subsequently reduced the proof required under the criminally-negligent homicide statute to the lesser degree of mental culpability of "knowingly."

class 1 misdemeanor that carries a sanction of six months to two years imprisonment.[6]

The prosecution, on the other hand, argues that the rationale of *People v. Bramlett, supra,* does not apply because section 18–3–203(1)(f), C.R.S. 1973 (1978 Repl. Vol. 8) (assault while in custody) proscribes conduct which has no relationship to the unlawful acts set forth in either the criminally-negligent homicide statute, or section 1(a) of the first-degree assault statute.

We agree with the prosecution. In *People v. Bramlett, supra,* we concluded that the intent and the conduct defined in the first-degree assault statute and the criminally-negligent homicide statute were not sufficiently distinguishable to justify a greater penalty for the infliction of serious bodily injury which would be imposed when death occurred. In reversing Bramlett's conviction for first-degree assault, we stated:

> "A statute which prescribes different degrees of punishment for the same acts committed under like circumstances by persons in like situations is violative of a person's right to equal protection of the laws." [Citations omitted.] *Id.* 194 Colo. at 208, 573 P.2d 94.

The issue here is whether the intent and the conduct proscribed by the second-degree assault statute and the criminally-negligent homicide statute, are sufficiently distinguishable to justify a greater penalty when the conduct proscribed by the assault statute results in the application of violent physical force as contrasted with death under the criminally-negligent homicide statute.[7]

■ It is clearly within the legislature's prerogative to establish the penalties and defenses which apply to specific criminal offenses, subject, of course, to constitutional restraints. *People v. Bramlett, supra.* Harsher penalties for crimes committed under different circumstances than those which accompany the commission of other crimes do not violate equal protection guarantees if the classification is rationally based upon differences in the acts or the conduct which is proscribed. *People v. Montoya,* 196 Colo. 111, 582 P.2d 673 (1978). *See also People v. Thompson,* 197 Colo. 299, 592 P.2d 803 (1979).

■ It is only where the same acts or conduct are set forth in two statutes with different criminal sanctions or to which different defenses are available, that equal protection guarantees are violated. *People v. Hulse,* 192 Colo. 302, 557 P.2d 1205 (1976); *People v. Calvaresi,* 188 Colo. 277, 534 P.2d 316 (1975). Here, the two criminal statutes in issue are distinguishable. The second-degree assault statute requires that the defendant be lawfully confined or in custody and the violent application of force must be against a person engaged in the performance of his duties while employed by or under contract with a detention facility. By contrast, criminally-negligent homicide requires that the defendant knowingly, in the good faith, but unreasonable belief that one or more grounds for justification exist, causes the death of another person.

■ In our view, the second-degree assault statute (assault while in custody) creates a separate and distinct offense which turns on substantial differences which have a reasonable relationship to the persons involved and the public purposes to be achieved. *See People v. Calvaresi, supra; People v. Bramlett, supra.* Accordingly, it was not error for the trial court to refuse to instruct the jury as to Gibson's good faith, but unreasonable belief that he had a right of self-defense.

## II.

■ Gibson asserts that the trial court erred in refusing his tendered instruction

---

6. *See* section 18–1–106, C.R.S. 1973 (1978 Repl. Vol. 8).

7. Gibson is not challenging the constitutionality of the penalty under the equal protection clause on the theory that all defendants charged with criminally negligent homicide or second-degree assault are always similarly situated. Here, Gibson introduced evidence concerning his good faith, albeit unreasonable belief that he had the right to self-defense under the circumstances.

on the lesser offense of third-degree assault, section 18-3-204, C.R.S. 1973 (1978 Repl. Vol. 8).[8] Gibson contends the evidence at trial supports his theory that he acted with a general, and not a specific, intent when he kicked the guard who was standing in front of him. Additionally, he claims that the evidence at trial raised the issue of whether the guard was "engaged in the performance of his duties," or whether he was acting as part of the "goon squad" which disciplined inmates who were believed to be out of line. He then argues that, under appropriate instructions, the jury could have found that the guard was not "engaged in the performance of his duties," and could have determined that he was only guilty of third-degree assault.

The prosecution answers with the assertion that there was no evidence in the record which would have permitted the jury to find that Gibson acted with general intent when he kicked the guard. Under the instructions on second-degree assault and self-defense, the prosecution points out that if the jury had found that the guard was acting illegally, the jury, under the instructions, would have had to find that Gibson had the right to defend himself against illegal force.

We have reviewed the record and conclude that no evidence supports Gibson's contention that he acted with general intent, and thus the trial court's refusal to instruct the jury as to third-degree assault was not error in this regard. *See Ortega v.*

*People,* 178 Colo. 419, 498 P.2d 1121 (1972); *Sims v. People,* 177 Colo. 229, 493 P.2d 365 (1972). On both direct and cross-examination, Gibson testified that he was not aiming at any particular place when he kicked out, but that he did in fact intend to kick the guard who was injured.[9] Consequently, there was no doubt as to Gibson's intent and the trial court properly denied Gibson's third-degree assault instruction. *People v. Rivera,* 186 Colo. 24, 525 P.2d 431 (1974).

Moreover, there is no evidence in the record which supports Gibson's argument that the guard was not "engaged in the performance of his duties."

In *Sims v. People,* 177 Colo. 229, 493 P.2d 365 (1972), we stated:

"[I]n those cases where the defendant must either be guilty of the offense charged or not guilty of any offense, it is error to submit to the jury an instruction on … a lesser included offense." *Id.* at 231, 493 P.2d 365.

*Accord, Ortega v. People,* 178 Colo. 419, 498 P.2d 1121 (1972).

■ Here, Gibson admitted, subject to his claim of self-defense, that he applied physical force to the guard. Thus, he was either guilty of second-degree assault (while in custody) or was entitled to an acquittal. Therefore, the trial court's refusal to instruct the jury on third-degree assault was not error.

Accordingly, the judgment of conviction is affirmed.

---

8. Section 18-3-204, C.R.S. 1973 (1978 Repl. Vol. 8), provides:

"A person commits the crime of assault in the third degree if he knowingly or recklessly causes bodily injury to another person or with criminal negligence he causes bodily injury to another person by means of a deadly weapon. Assault in the third degree is a class 1 misdemeanor."

9. The following testimony was presented at Gibson's trial in the district court. On direct examination, Gibson testified:

MR. SCHLATTER: "Okay. When you kicked out, were you aiming at any particular place?"
MR. GIBSON: "No place in particular, just trying to stop him."
On cross-examination, Gibson testified:

MR. ANDERSON: "I'd like to have you tell me who it was you were trying to kick as you kicked out under these circumstances."
MR. GIBSON: "The man that appeared to me to be trying to swing at me."
MR. ANDERSON: "Which was?"
MR. GIBSON: "Lieutenant Ritter."
MR. ANDERSON: "Okay. Didn't you say awhile ago on your direct examination that you didn't know where you were kicking, you were just kicking out?"
MR. GIBSON: "Mr. Schlatter, I believe, meant to the exact area I was kicking to, not to the person."
MR. ANDERSON: "So you were testifying that you were aiming at Ritter, but you didn't know where you were going to hit him, you were just going to kick him?"
MR. GIBSON: "Yes, sir."