219 So.2d 363

**Charles Ernest RICKARD**

v.

**STATE.**

**8 Div. 283.**

Supreme Court of Alabama.

Feb. 13, 1969.

---

1. See, In re Sullivan, supra, for a discussion of the method of taking depositions in disbarment proceedings.

Chas. A. Ball, Jr., Tuscumbia, for appellant.

MacDonald Gallion, Atty. Gen., and Carl E. Watson, Asst. Atty. Gen., for the State.

HARWOOD, Justice.

This appellant, Charles Ernest Rickard, has been adjudged guilty of murder in the second degree under an indictment charging him with murder in the first degree.

In the trial below he entered pleas of not guilty and not guilty by reason of insanity.

The evidence tends to show that the deceased, Claud Thomason, came to appellant's home around 12:30 P.M., on 24 October 1965. The appellant and deceased were cousins and had known each other since boyhood. The men sat on the porch and talked. Mrs. Rickard was preparing the midday meal and Thomason accepted the Rickard's invitation to eat with them. After the meal the men sat in the kitchen talking. Mrs. Rickard went into a bedroom and lay down.

About 3:00 P.M., Mrs. Rickard heard a loud noise and went into the kitchen. She saw Thomason lying on the floor bleeding. The appellant was standing near a table. Mrs. Rickard kept asking what had happened but the appellant would make no reply. Mrs. Rickard examined Thomason's body and determined he was dead. She announced she would call the sheriff but the appellant refused to let her make any call. In fact all during the afternoon Mrs. Rickard repeated her wish to call the sheriff but the appellant would not permit her to do so, but kept telling her to "get that out of here" meaning the body.

During the afternoon, Mrs. Rickard wrapped Thomason's body in a blanket and dragged it to the rear porch. Later, she dragged it to a woodshed in the rear.

Around 5:00 P.M., the Rickard's daughter, Betty, came home and Mrs. Rickard told her what had occurred. Together they pleaded with the appellant to permit them to call law enforcement officers, but the appellant was adamant in his denial of these requests.

Finally, around 7:00 P.M., the appellant gave his consent that they might call their minister. This call was made by Mrs. Rickard to Mr. M. J. McElhany, minister of the First Methodist Church in Cherokee, Alabama. In a short while Mr. McElhany arrived at the Rickard home accompanied by Mr. Wesley Morgan. After talking with Mrs. Rickard, Mr. McElhany returned to his parsonage and called the Cherokee police. He returned to the Rickard home and two Cherokee policemen were there. Shortly the sheriff of Colbert County and two deputies arrived.

A pistol found on a dresser in a bedroom by Mrs. Rickard was turned over to the officers. After some investigation, police officers Patterson and Pope forcibly took the appellant to the jail in Cherokee. Chief Davis arrived at the jail shortly and informed the appellant he would not have to make a statement without having a lawyer present. No effort was made to interrogate the appellant at this time.

Policeman Pope, who was on duty at the jail, testified that shortly after midnight appellant indicated he wanted to talk to him. According to Pope:

"He wanted a cigarette, and I gave him one. He said, 'Joe, you know you are my friend.' I said 'Yes, I am your friend.' I said, 'I don't have nothing against you.' He said, 'Why can't I get out and go home?' I told him I had no authority whatsoever to let him out, and he started to crying, and he stated that—he said 'Joe, you know I didn't mean to shoot him, that's my best friend, all I can see is him laying in the floor with all that blood around him,' and he started laughing."

■ A full predicate of voluntariness other than offer of counsel was laid before the admission of the above statement. While it is reasonable to deduce that under the totality of the circumstances the state-

ment would be admissible even under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, we need not so determine, since this case was tried and judgment was entered prior to 13 June 1966. The full requirements of *Miranda,* supra, are therefore not applicable. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882.

After indictment, appellant filed a petition in the Circuit Court that "Your Honor will in accordance with Section 425, Title 15, Code of Alabama 1940, as last amended, obtain a full written report of Petitioner's mental condition as provided for in said Code Section before ordering Petitioner to trial in this cause."

After a hearing at which Dr. Joseph M. Glaister, a psychiatrist, was presented by the appellant, the court denied the petition.

The testimony of the psychiatrist is indeed tenuous. He testified that the appellant was suffering from a "mental illness of psychotic proportions," that the appellant suffered from hallucinations but that appellant knew "these things are really happening," and that "all of my opinion is based on hallucinations, and I am well aware that some fellows might tell me that hallucinations can be imitated like that." In reply to a question as to whether appellant knew right from wrong, the witness replied, "I would have to say he was able to perceive that they were hallucinations." The witness also testified he was not able to say that appellant was psychotic at the time of the offense.

This witness had examined appellant three times, twice in his office and the third time for about four minutes just before the hearing. After the first examination, the witness had reported that the appellant was not psychotic.

The hallucinations referred to by the witness were that appellant had told him that his mother, who appellant knew to be dead,

had appeared to appellant and stated she would help him, and that he (appellant) had conversed with the deceased. The appellant had also expressed hostility against the judge, which witness thought was inspired by politics, and against the district attorney. Over the appellant's objections, it was also shown through Judge Burt of the Colbert County Law and Equity Court, that following a preliminary hearing before him on the present charge, a petition was filed in said court seeking to have appellant committed to the insane asylum. The petition was heard with a jury and they found appellant sane. The appellant objected to Judge Burt's testimony on the ground that it "is not the best proof.'

■ We are unwilling to cast a reversal on the lower court in this instance, though the records of the Colbert County Law and Equity Court would have been the proper way to establish the facts sought to be shown.

■ The reason we are unwilling to reverse because of the questionable admission of Judge Burt's testimony is that the question of the appointment of specialists in mental disorders in response to a petition therefor is solely within the discretion of the trial court when the court considers such advice would be helpful. Coon v. State, 278 Ala. 581, 179 So.2d 710; Tiner v. State, 279 Ala. 126, 182 So.2d 859.

■ The appellant filed a motion to quash the indictment and a plea in abatement. The basis of the motion and plea was the insufficiency of the evidence presented to the grand jury authorizing the grand jury to return an indictment against the appellant.

A hearing was had upon the motion and plea and the court overruled the motion and plea.

The evidence presented on this hearing palpably supported the court's action in

the premises and we see no reason to indulge in a discussion of this evidence.

At the start of the trial, the appellant made a motion for a continuance on the grounds that he was mentally incapable to assist in his defense at the time, and further, that a deposition propounded to Dr. J. J. McCaughan, Chief Surgeon, Veterans Administration Hospital, Memphis, Tennessee, filed in the Circuit Court on 28 March 1966, had not been answered.

Again, Dr. Glaister testified in the hearing on the motion for a continuance, and expressed a guarded opinion that the appellant was mentally incapable of conducting his defense. On cross examination, Dr. Glaister testified that:

"I have indicated before these hallucinations and delusions could be faked, and this is why I have not * * * I have not said absolutely that he is psychotic. The delusions, I have thought about them, I believe they are true. I believe they are true symptoms."

Dr. Glaister also testified that he had been furnished a summary of the medical report of the Veterans Hospital in Memphis of the findings on examination of appellant on 27 and 28 October 1965. This report was received in evidence at the instance of the appellant. We note among the findings of the report the following:

"He is not psychotic and is not suitable for psychiatric treatment in this institution at this time."

For the state, Dr. J. F. Hensleigh, a general practitioner of medicine in Cherokee, testified he had been appellant's physician for some eleven years. On the night of the killing he had tended the appellant for some two hours in jail, and had seen and conversed with him frequently on the streets since that time. Dr. Hensleigh testified that in his opinion the appellant was not psychotic either at the time of the offense, or at the present time.

The record further shows that on arraignment on 15 March 1966, the date of trial was set for 21 March 1966, but was continued until 5 April 1966. The interrogatories were filed on 28 March 1966.

The court overruled the motion for a continuance.

■ In view of the conflicting evidence as to appellant's present mental condition, it was within the sound discretion of the court to deny the motion for a continuance in the aspect of appellant's mental condition at the time of trial.

■ Further, it was in the court's sound discretion to deny the motion for a continuance because no answers to the interrogatories propounded to the surgeon in Memphis had been filed. Under all the circumstances, it cannot reasonably be said that the discretion of the court was abused in this instance. Arant v. State, 232 Ala. 275, 167 So. 540.

■ In the trial below the appellant's case was rested upon his plea of not guilty by reason of insanity. Expert and lay evidence was offered to sustain the plea, and likewise such evidence was offered by the state in contradiction. In this contradictory state of the proof, the question of appellant's sanity was one within the province of the jury. Arant v. State, supra.

In qualifying the jury the court questioned the jurors as to whether they were connected or kin by consanguinity within the ninth degree, or by affinity within the fifth degree, either with the defendant or with the prosecutor, or the person alleged to be injured. (See Section 55, Title 30, Code of Alabama 1940, *Challenges for Cause.*) Harold G. Whiteside, who served on the trial jury, did not acknowledge such relationship.

Counsel for appellant argues in brief that said juror was related to the deceased by marriage, and attaches to his brief an

affidavit of the wife of the appellant which counsel claims shows such relationship. The affidavit is deficient to so show. Three family names are used in the affidavit, namely Thomason, Rich, and Whiteside. No common ancestor is shown.

■ This aside, no motion for a new trial was made in this case and the matter now argued in the appellant's brief is not shown by the record. It is elemental that under such a situation we can consider only the record and not matters asserted in the brief of counsel which is not supported by the record. (See 2 Ala. Digest, Appeal and Error, ☞714(5), for innumerable authorities.)

Other alleged errors are mentioned in appellant's brief. These points are so palpably without merit that a discussion of them is unnecessary.

■ The evidence presented by the state was ample in its tendencies to support the verdict of the jury. The court gave a full, fair, and adequate oral charge to the jury, and a number of written charges requested by the appellant. Some charges requested by the appellant in writing were refused. All such charges were covered by the court's oral instructions, or other written charges requested by the appellant.

While an affirmance of this judgment is in order, we are remanding the cause to the court below for the entry of a proper judgment of guilt, and a proper imposition of sentence.

In parts pertinent to the deficiency we are now considering, the minute entry recites:

" * * * thereupon in open court on this day in the presence of the State Solicitor, (defendant's attorney) and defendant came a jury of good and lawful men, to-wit: Frank Carroll and eleven others who, having heard the evidence and the charge of the court upon their oaths in open court on this day in the presence of the State Solicitor, (defendant's attorney) and defendant do say 'We, the jury, find the defendant guilty of murder in the second degree and fix his punishment at twenty-five (25) years imprisonment in the State Penitentiary.'

"Thereupon in open court on this day the defendant being asked by the court if he had anything to say why the judgment and sentence of the law should not be passed upon him stood mute, and the Court thereupon sentenced the defendant to twenty-five (25) years for his offense, and orders that the sentence be executed immediately * * *."

■ This minute entry is a recitation by the clerk of what the court did, not the consideration and expression by the court of the sentence of the law. It is a mere memorandum of a ministerial officer, narrative of, but not contemporaneous with, the transaction to which it refers. Gray v. State, 55 Ala. 86; Knight v. State, 273 Ala. 480, 142 So.2d 899.

■ However, this is a homicide case where the jury, by statute, and not the court, has the power to adjudge guilt and to fix punishment. The minute entry clearly shows that it was intended to and did record such adjudication by the jury. It is sufficient to support an appeal. Wells v. State, 19 Ala.App. 403, 97 So. 681.

■ The imposition of a sentence upon a verdict is not the act of the court, but the judgment of the law the court is commanded to pronounce. Gray v. State, supra.

The record disclosing the court has not entered an adjudication of guilt, nor a proper pronouncement of sentence, this cause is remanded to the lower court for corrective action in the premises.

Affirmed, but remanded for entry of a proper judgment.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.