**The PEOPLE of the State of Colorado,
Plaintiff-Appellee,**

v.

**Ronald B. TIPPETT,
Defendant-Appellant.**

**No. 86SA3.**

Supreme Court of Colorado,
En Banc.

March 9, 1987.
Rehearings Denied April 6, 1987.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John Milton Hutchins, First Asst. Atty. Gen., Denver, for plaintiff-appellee.

Richard D. Irvin, Boulder, for defendant-appellant.

VOLLACK, Justice.

In this appeal, the defendant, Ronald B. Tippett, seeks reversal of his conviction by jury trial of two counts of second degree kidnapping, section 18-3-302(2), 8B C.R.S. (1986) [hereinafter 18-3-302(2)], two counts of violation of custody, section 18-3-304(2), 8B C.R.S. (1986) [hereinafter 18-3-304(2)], and of his sentence in the aggravated range for the two counts of second degree kidnapping. We affirm the conviction of two counts of violation of custody and set aside the judgment and sentence for the two counts of second degree kidnapping.

I.

The facts which led to the filing of charges against the defendant are not in dispute. The defendant has two children from a former marriage, and his wife, Penny Tippett, formerly Penny Hartman, also has two children from a previous marriage. Neither of them has custody of their children. The Tippetts were allowed to see their children on visitation days pursuant to agreements with their respective former spouses. In the case of the Hartman separation agreement, the district court judge incorporated the parties' agreement into a court order of November 18, 1982. The same district judge presided over the Tippett divorce. During the weekend of April 29, 1983, both the defendant and his wife had visits with their children. The defendant and his wife took the children to the State of Tennessee, without notifying the custodial parents where the children would be, and provided no means for communication between the custodial parents and the children. The defendant sent a letter to his former spouse, Tylene Wilson, in which he

stated that he was taking the children, and that he would be in touch with Ms. Wilson in three years. Tylene Wilson and David Hartman, Penny Tippett's former spouse, both reported their children missing when the children were not returned to them on Sunday, May 1. On May 3, 1983, a warrant of arrest was issued for the defendant for two counts of violation of custody. Based on the Colorado arrest warrant, the Federal Bureau of Investigation put out an unlawful flight to avoid prosecution warrant. On May 31, 1983, in Signal Mountain, Tennessee, a suburb of Chattanooga, the FBI located and arrested Ron and Penny Tippett.

On June 21, 1983, the defendant was charged by criminal complaint with four counts of violation of custody pertaining to all four children, and two counts of second degree kidnapping pertaining to the Hartman children. The defendant proceeded pro se but requested, and was granted, a court-appointed advisory counsel. On March 5, 1984, the case proceeded to trial by jury.

At trial, the defendant admitted to taking the four children to Tennessee without the consent of the children's custodial parents. The defendant sought to admit into evidence facts relating to the alleged unfitness of both Tylene Wilson and David Hartman as custodial parents. The defendant also sought to admit into evidence the health and happiness of the children while in his custody in Tennessee. The court limited the evidence to the issue of the defendant's state of mind immediately prior to the time that the defendant took the children, as it related to the affirmative defense to violation of custody, and restricted the evidence as to the character of the custodial parents.

The prosecution claimed that the defendant took the children because he did not like the results of various court proceedings, the recommendation of child psychologists that custody of his own children be continued with his ex-wife, and because Penny Tippett refused to abide by the separation agreement and court order which

vested custody of her children with her ex-husband, David Hartman. The defendant asserted the statutory affirmative defense to the charges of violation of custody, section 18-3-304(3), claiming that he reasonably believed his actions were necessary to preserve the children from danger to their welfare.

During the presentation of its case, the prosecution presented the testimony of an attorney, John Gaddis, who represented the defendant in his divorce. Gaddis testified to the existence of an agreement between the defendant and Ms. Wilson concerning custody and visitation rights. The agreement stipulated that the parties would abide by a custody evaluation to be performed by child psychologists. Gaddis testified that he learned that the psychologists were going to recommend that custody be continued with Ms. Wilson. He learned of this recommendation towards the end of April 1983 and communicated this information to the defendant prior to April 29, 1983. The defense objected to the testimony regarding this communication to the defendant on the grounds that it violated the defendant's attorney-client privilege and made a motion for mistrial. The trial court denied the motion.

After the prosecution rested its case, the defendant moved for acquittal on all counts. The defendant claimed that the kidnapping charge was not applicable to this case because Penny Tippett, the mother of the Hartman children, was present while the children were in the defendant's custody. The defendant also claimed that section 18-3-304(2), the violation of custody statute, was unconstitutionally vague as interpreted by the trial court. In addition, the defendant stated that if the court ruled that the prosecution had established a prima facie case as to the charges, the prosecution should be required to elect between the kidnapping charges and the violation of custody charges regarding the Hartman children. The defendant claimed that such an election was required because the same conduct, namely, taking the children, was

the basis for both charges. The trial court denied the motion to elect.

The defendant's case primarily consisted of his own testimony and that of Penny Tippett. Their testimony centered on their state of mind as to the welfare of their children prior to the date they took the children to Tennessee. After the defense rested, the prosecution called as a rebuttal witness the judge who presided at the Tippett and Hartman divorce cases. On direct examination, the prosecution asked the judge if he had formed an opinion as to the character for truth and veracity of both Penny Tippett and the defendant. The defendant's objection to this question was overruled, and the judge stated that Penny Tippett was "absolutely not truthful," and that the defendant was not truthful "in the context of this case." After the judge's testimony and cross-examination, the defense made a motion for a mistrial on the basis that it was improper for the judge to give his opinion as to the defendant's truth and veracity in court and because, according to the defendant, the door was not open to this type of testimony as to the truthfulness of the defendant. The court ruled that CRE 405 expressly sanctioned testimony in the form of an opinion and denied the motion for mistrial.

At the conclusion of the presentation of the evidence, the court addressed the issue of selecting the alternate juror. The defense stated that the alternate juror was the last person called. The prosecution did not know the proper method to select the alternate juror. The court suggested the alternate juror be selected by lot. The prosecution agreed to this method, but the defense continued to insist that the proper method was to choose the thirteenth juror. Over the defendant's objection, the alternate juror was selected at random by lot. After the alternate juror was discharged, the jury received its instructions. The defendant sought to introduce jury instructions on the defense of apparent necessity. The trial court refused to admit these instructions. The defendant also requested a special verdict form that the defendant could not be guilty of both second degree

kidnapping and violation of custody. The trial court refused the request. The jury returned a verdict of guilty to the violation of custody concerning the Hartman children and not guilty to the counts of violation of custody concerning the defendant's children. The jury returned a guilty verdict to the charges of second degree kidnapping concerning the Hartman children.

The defendant was sentenced in the aggravated range to eight years on the two charges of second degree kidnapping and two years on the two charges of violation of custody, the sentences to run concurrently, plus one year of parole.

## II.

The defendant claims that section 18–3–304(2) is unconstitutionally vague. We disagree.

The due process clauses of the Colorado Constitution, Colo. Const. art. II, § 25, and of the United States Constitution, U.S. Const. amend XIV, require criminal laws to be sufficiently specific to give fair warning of proscribed conduct. *People v. Schoondermark*, 699 P.2d 411, 415 (Colo. 1985). A penal statute is unconstitutionally vague if it "forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess as to its meaning and differ as to its application." *Id.* (quoting *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)). All statutes are presumed to be constitutional, and the party attacking the statute has the burden of proving it unconstitutional beyond a reasonable doubt. *Schoondermark*, 699 P.2d at 415; *People v. Franklin*, 683 P.2d 775 (Colo.1984); *People v. Enea*, 665 P.2d 1026 (Colo.1983).

Section 18–3–304(2) states that "any parent or other person who violates an order of any district or juvenile court of this state granting the custody of a child under the age of eighteen years to any person, agency, or institution, with the intent to deprive the lawful custodian of the custody of a child under the age of eigh-

teen years, commits a class five felony." 8B C.R.S. (1986). The defendant claims that the word "custody" is undefined by statute and subject to multiple interpretations. According to the defendant, "custody" could be used to refer to physical custody or to refer to all decisions concerning the upbringing of the child, including religion, education, and medical care,[1] and thus any violation of a court order regarding custody would be criminal. We find this argument unpersuasive. Section 18–3–304(2) specifically addresses the situation in which a parent or person "deprives the lawful custodian of the custody of a child." This clearly contemplates the taking of the child.

■ This court has repeatedly noted that a criminal statute need not contain precise definitions of every word or phrase constituting an element of the offense. *Schoondermark*, 699 P.2d at 416; *People v. Castro*, 657 P.2d 932 (Colo.1983). A statute claimed to be impermissibly vague will be closely scrutinized, *People v. Jennings*, 641 P.2d 276 (Colo.1982), and courts will attempt to construe the legislation in a manner which will satisfy constitutional due process requirements if reasonable and practical construction will achieve such result. *People v. Rostad*, 669 P.2d 126 (Colo. 1983). We must construe a statute so as to uphold its constitutionality whenever a reasonable and practical construction may be

applied to it, *People v. Moyer*, 670 P.2d 785 (Colo.1983), and reading section 18–3–304(2) in its entirety makes clear that the word "custody" refers to the taking of a child from the physical control of the legal custodian.[2]

■ In addition to the vagueness argument, the defendant claims that section 18–3–304(2) is unconstitutionally overbroad. The overbreadth doctrine is applicable to legislative enactments which threaten the exercise of fundamental or express constitutional rights, such as first amendment freedoms. *People v. Mason*, 642 P.2d 8 (Colo.1982); *People v. Garcia*, 197 Colo. 550, 595 P.2d 228 (1979); *People v. Blue*, 190 Colo. 95, 544 P.2d 385 (1975).

> The determinative factor in an overbreadth analysis is not the prohibition of acts which are commonplace, but rather the prohibition of acts which are legitimate. The standard for the determination of legitimacy is whether the legislative act was within the proper exercise of its police power. An act is within the state's police power if it is reasonably related to the public health, welfare, and safety.

*People v. Garcia*, 197 Colo. at 553, 595 P.2d at 230. A statute preventing a parent or other person from taking a child in violation of a court order regarding the custody

---

1. The defendant cites our decision of *In re Marriage of Lampton*, 704 P.2d 847 (Colo.1985), for his characterization of "legal custody," as being all decisions regarding the upbringing of the child. In *Lampton*, we in turn referred to section 14–10–123.5, 6 C.R.S. (1986 Supp.), which defines joint custody as "an order awarding legal custody of the minor child to both parents and which provides that all decisions regarding the health, education, and general welfare of the child shall be made jointly." We note that this statute regarding joint custody was not in effect at the time the Tippetts divorced their respective spouses, and applies only to orders of joint custody entered on or after July 1, 1983.

2. Section 18–3–304 states in pertinent part:

 **Violation of custody.** (1) Any person, including a natural or foster parent, who, knowing that he has no privilege to do so or heedless in that regard, *takes* or entices any child under the age of eighteen years from the custody of

his parents, guardian, or other lawful custodian commits a class 5 felony.

(2) Any parent or other person who violates an order of any district or juvenile court of this state, granting the custody of a child under the age of eighteen years to any person, agency, or institution, with the intent to deprive the lawful custodian of the custody of a child under the age of eighteen years, commits a class 5 felony.

(3) It shall be an affirmative defense either that the offender reasonably believed that his conduct was necessary to preserve the child from danger to his welfare, or that the child, being at the time more than fourteen years old, was *taken away* at his own instigation without enticement and without purpose to commit a criminal offense with or against the child.

§ 18–3–304(1), (2), (3), 8B C.R.S. (1986) (emphasis added).

of that child is a legitimate exercise of police power. Before the enactment of the violation of custody statute, a parent who violated a custody order of a court could be prosecuted under a kidnapping statute. In *Lee v. People*, 53 Colo. 507, 511, 127 P. 1023, 1025 (1912), we stated that:

> It is for the protection of children, and for the benefit of society, that courts take jurisdiction of the status of parent and child, and when that jurisdiction attaches and a valid and binding decree has been entered, which divests either parent of the custody and gives to the other, then such child is as fully protected from being stolen and carried away by the parent, thus divested of its custody, as if done by any other person. The necessity for a statute of this sort, applicable to just such cases as the one before us, is clearly apparent. But for it, or a similar one, there would be no adequate protection for a parent, who has been awarded exclusive custody of a child, against its unlawful seizure and removal to another state by the one ousted of its custody and control.

Accordingly, we hold that the defendant's challenge to the constitutionality of section 18-3-304(2) is without merit.

### III.

■ The defendant contends that the evidence was insufficient to prove beyond a reasonable doubt that the defendant was guilty of violation of custody. A challenge to the sufficiency of the evidence to support a criminal conviction requires us to determine whether the evidence, when viewed as a whole and in a light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime beyond a reasonable doubt. *Taylor v. People*, 723 P.2d 131 (Colo.1986); *People v. Aalbu*, 696 P.2d 796 (Colo.1985); *People v. Gonzales*, 666 P.2d 123 (Colo.1983); *People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973). The defendant contends that the evidence presented showed no more than that the defendant advised and assisted Penny Tippett in tak-

ing her own children, and that this did not rise to the level of guilt beyond a reasonable doubt as a principal. We disagree. Throughout the trial, the defendant admitted taking the children to Tennessee. At one point, the defendant stated: "I took those children to Tennessee—at the time I took those children, I felt I had no other alternative.... When I speak of my children, I speak of all four of these children although I am not the father of Paul and Amy [Hartman]." It is clear from the record that the defendant was an involved actor in the taking of all four children to Tennessee; therefore, the defendant was properly charged as a principal to violation of custody.

■ The defendant next contends that he could not be convicted of violation of custody because Penny Tippett could not be convicted of the crime due to her equal right to joint custody of the Hartman children. The Hartman separation agreement, adopted as the court order on November 18, 1982, states in pertinent part:

> The parties agree that they shall have joint custody of the minor children of the marriage, and that the *husband shall be the primary residential custodian* of the children, and the *wife shall have visitation rights* with the minor children of the marriage....

(Emphasis added.) The agreement sets out the times of visitation in some detail. The agreement further mandates that "neither the husband or the wife shall leave the State of Colorado with either or both of the minor children, without the prior written consent of the other party." It is clear from language of the court order that Penny Tippett did not have the authority or the right to remove the children from Colorado.

### IV.

■ The defendant claims that his conviction of both violation of custody and second degree kidnapping was a violation of his right to equal protection under the law. The defendant contends that the conduct proscribed in both section 18-3-

302(2)[3] and section 18–3–304(2) is identical and that the violation of custody statute is more specific than the general conduct of second degree kidnapping. We disagree.

Section 18–1–408(1)(d), 8B C.R.S. (1986), states:

> **Prosecution of multiple counts for same act.** (1) When any conduct of a defendant establishes the commission of more than one offense, the defendant may be prosecuted for each such offense. He may not be convicted of more than one offense if:
>
> . . . .
>
> (d) The offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such con-. duct.

We have interpreted these provisions to apply only to situations "where the offenses themselves are defined in terms of general and specific kinds of conduct." *People v. Miller*, 199 Colo. 32, 34, 604 P.2d 36, 37 (1979) (quoting *People v. Blair*, 195 Colo. 462, 474, 579 P.2d 1133, 1143 (1978)). The crimes at issue here, second degree kidnapping and violation of custody, are not so defined.

■ Second degree kidnapping encompasses the conduct of any person who intentionally takes a child with intent to keep or conceal him from his parent or guardian. § 18–3–302(2). The violation of custody statute, section 18–3–304(2), however, focuses on the violation of a court order granting custody of a child to any person, agency, or institution, with the intent to deprive the lawful custodian of the custody of the child. Violation of custody is a separate and distinct offense from second degree kidnapping, and is intended for the protection not only of children but of society as a whole. *Lee v. People*, 53 Colo. 507, 511, 127 P. 1023, 1025 (1912).

■ Although the conduct required for second degree kidnapping in this case contravened the violation of custody statute, the offenses are not necessarily general and specific versions of the same course of activity. In addition, the enactment of a specific criminal statute does not preclude prosecution under a general criminal statute, unless there is statutory language clearly indicating that the legislative intent was to limit prosecution to the specific statute. *People v. Westrum*, 624 P.2d 1302 (Colo.1981). Here, there is no legislative language that restricts the prosecution to the violation of custody statute to the exclusion of the second degree kidnapping statute. The legislature has the power to define criminal offenses, subject to constitutional limitations which require that the enactment not be arbitrary or unreasonable in its classification and that there be a reasonable relationship to the public purpose to be achieved. *People v. Hulse*, 192 Colo. 302, 304–05, 557 P.2d 1205, 1206–07 (1976) (citing *People v. Calvaresi*, 188 Colo. 277, 534 P.2d 316 (1975)). We find that it is not a violation of equal protection to convict the defendant of both violation of custody and second degree kidnapping.

■ However, since both charges were committed within the same judicial district,

---

3. Section 18–3–302 reads as follows:

> **Second degree kidnapping.** (1) Any person who knowingly, forcibly, or otherwise seizes and carries any person from one place to another, without his consent and without lawful justification, commits second degree kidnapping.
>
> (2) Any person who takes, entices, or decoys away any child not his own under the age of eighteen years with intent to keep or conceal the child from his parent or guardian commits second degree kidnapping.
>
> (3) Second degree kidnapping by any person under subsection (1) or (2) of this section is a class 2 felony if the person kidnapped:

> (a) Is a victim of a sexual assault; or
>
> (b) Is a victim of a robbery.
>
> (4) Second degree kidnapping is a class 3 felony if the kidnapping is accomplished by the use of a deadly weapon but did not include sexual assault or robbery. A defendant convicted pursuant to this subsection (4) shall be sentenced by the court in accordance with the provisions of section 16–11–309, C.R.S.
>
> (5) Second degree kidnapping is a class 4 felony in all other cases not covered by subsection (3) or (4) of this section.
>
> § 18–3–302, 8B C.R.S. (1986).

were based on acts arising from the same criminal episode, and were supported by identical evidence, the defendant had the statutory right to move for an election between the charged offenses. Section 18–1–408(3) states:

> (3) When two or more offenses are charged as required by subsection (2) of this section and they are supported by identical evidence, the court upon application of the defendant may require the state, at the conclusion of all the evidence, to elect the count upon which the issues shall be tried. If more than one guilty verdict is returned as to any defendant in a prosecution where multiple counts are tried as required by subsection (2) of this section, the sentences imposed shall run concurrently.

§ 18–1–408(3), 8 C.R.S. (1973).[4] This statute makes clear that the court is vested with discretion to either grant or deny the motion to elect. *People v. Anderson,* 187 Colo. 171, 529 P.2d 310 (1974) (construing § 40–1–508(3), 1963 C.R.S. (1971 Perm Supp.), now contained in § 18–1–408(3), 8B C.R.S. (1986)). Careful consideration of the facts of this case lead us to the conclusion that the trial court's failure to grant the defendant's motion to elect, or in the alternative, to instruct the jury that it could find the defendant guilty of kidnapping or violation of custody, but not both, was an abuse of discretion that requires reversal of the defendant's conviction of second degree kidnapping.

The criminal charges against the defendant arose out of a family dispute. The defendant was in bitter conflict with his ex-wife over the custody of their two children. Penny Tippett was in a similar dispute with her ex-husband concerning the two children from their marriage. The guardian ad litem and a social worker from the Boulder County Department of Social Services testified that numerous complaints were filed by the defendant and Penny Tippett concerning alleged physical abuse of the children by the two custodial parents. They further testified that after investigations into the abuse allegations were completed, no abuse was found to have occurred. Shortly before the Tippetts left for Tennessee, Penny Tippett was found guilty of contempt of the court custody order, which granted custody of the Hartman children to David Hartman, when she refused to return her two children to their father after a weekend visit during Christmas of 1982. Taking the children to Tennessee was the culmination of a long, bitter family dispute.

The defendant introduced evidence to show that he was concerned for the children's safety. While this evidence was properly limited to his state of mind at the time he took the four children, and did not rise to the level of an affirmative defense to violation of custody, it does illustrate the familial nature of this situation. The defendant is the stepfather of the children he is convicted of kidnapping and the natural mother was present and an active participant during the taking. The Tippetts apparently decided together to take the law into their own hands. The arrest warrant for the defendant was issued for two counts of violation of custody concerning the defendant's own children. The other charges were brought after his arrest. The defendant's conduct was criminal and punishment is appropriate. However, under the facts of this case, the trial court abused its discretion in not requiring the district attorney to elect or, in the alternative, to instruct the jury that it could find the defendant guilty of second degree kidnapping or violation of custody, but not both. Therefore, we set aside the judgment of conviction for second degree kidnapping and the sentence imposed.

## V.

The defendant contends that the trial court committed evidentiary errors which

---

**4.** Section 18–1–408(3) was amended, effective July 1, 1985, to add the following language:

except that, where multiple victims are involved, the court may, within its discretion, impose consecutive sentences.
8B C.R.S. (1986), 1985 Colo.Sess.Laws 661.

denied him a fair trial. The defendant claims that it was prejudicial error to allow the defendant's attorney in the civil divorce and custody proceedings to testify about conversations he had with the defendant. The defendant also claims that the trial court erred in allowing the judge who presided over both the Tippett-Wilson and the Hartman divorce proceedings to testify as to the character of the defendant and his wife Penny for truth and veracity. In addition, the defendant contends that the court erred in not allowing the defendant to present evidence of the unfitness of the custodial parents, Tylene Wilson and David Hartman, to establish the affirmative defense to violation of custody, based upon the defendant's concern for the safety of the children. We will separately consider each issue.

### A.

Although the defendant was acquitted of the charges relating to his own children, to which the evidence of his divorce attorney John Gaddis was pertinent, the defendant alleges that he was prejudiced by the admission of this evidence, which violated his attorney-client privilege. We disagree.

John Gaddis represented the defendant in divorce proceedings for approximately a year and one half. Gaddis testified that the defendant and Tylene Wilson had entered into a stipulation that each party would abide by a professional child custody evaluation which would recommend which parent should receive custody. Over the defendant's objection, Gaddis testified that he communicated the results of the custody

evaluation to the defendant towards the end of April 1983, but before May 1, 1983.

 The common law attorney-client privilege has been codified in Colorado by section 13–90–107(1)(b), 6 C.R.S. (1986 Supp.), which states in pertinent part:

There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person shall not be examined as a witness in the following cases:

. . . .

(b) An attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment; nor shall an attorney's secretary, paralegal, legal assistant, stenographer, or clerk be examined without the consent of his employer concerning any fact, the knowledge of which he has acquired in such capacity.

The attorney-client privilege extends only to confidential matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations. *See, e.g., Law Office of Bernard D. Morley v. McFarlane,* 647 P.2d 1215 (Colo.1982); *A. v. District Court,* 191 Colo. 10, 550 P.2d 315 (1976), *cert. denied,* 429 U.S. 1040, 97 S.Ct. 737, 50 L.Ed.2d 751 (1977); *Losavio v. District Court,* 188 Colo. 127, 533 P.2d 32 (1975). Such communications are private or secret and thus privileged. It is clear Gaddis did not testify as to confidential communications.[5] He testified to the exist-

---

5. At trial, Gaddis testified as follows:

A [by Gaddis] That stipulation consisted of the parties agreeing to abide by an evaluation, custody evaluation of doctors Barris and Raffe. In other words, there was a hearing scheduled sometime later that year. And the parties agreed to be bound by the professional opinions of Doctors Barris and Raffe who had done an earlier custody evaluation. There was one other part to the stipulation and that was that the noncustodial parent would receive specific visitation. And it was spelled out in the stipulation. I believe that that stipulation was then signed by the parties and their attorneys.

Q [by the prosecutor] During the middle part of April 1983, did you learn from Doctors Barris and Raffe what the recommendation was going to be concerning who was going to have custody and who would have visitation?
A [by Gaddis] I believe it's towards the end of April I did receive a call from Barris and Raffe regarding the results of the evaluation.
Q [by the prosecutor] And it was their—they told you they were going to recommend custody in whom?
MR. IRVIN [counsel for defendant]: Objection, hearsay.
THE COURT: Overruled.

ence of a written stipulation that the defendant entered into with his ex-wife. The stipulation and its contents were known to third parties and were not confidential. Therefore, the trial court did not commit error in allowing Gaddis to testify.

### B.

The defendant next contends that the trial court erred in allowing the judge who presided in the Tippett and Hartman divorce actions to testify as to his opinion of the defendant's character for truth and veracity. The judge's testimony was part of the People's rebuttal. The defendant admits that character evidence in the form of opinion is admissible under CRE 405, but argues that there is inherent prejudice in allowing a judge to testify against any defendant in a criminal case.

■ CRE 605 states: "The judge presiding at the trial may not testify in that trial as a witness. No objection need be made in order to preserve the point." 7B C.R.S. (1984). In Colorado, there is no statutory prohibition against a judge testifying as a witness in a cause not on trial before him. Generally, a judicial officer called to the stand in a case in which he is not sitting as a judge is not disqualified by his office from testifying. Cleary, *McCormick on Evidence* § 68 (3d ed. 1984). The issue before us, therefore, is not the competency of the judge to testify, but whether his testimony as to the truth and veracity of the defendant and his wife is admissible.

CRE 405 states in pertinent part that, "In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion." 7B C.R.S. (1984). CRE 608 states in pertinent part that, "The credibility of a witness may be attacked or sup-

ported by evidence in the form of opinion or reputation," subject to the limitation that "the evidence may refer only to character for truthfulness or untruthfulness." 7B C.R.S. (1984). Rule 405 governs the methods of proving character, but does not determine whether such evidence is admissible. Admissibility of character evidence is within the domain of Rule 404. 10 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* § 405.02 (2d ed. 1985). CRE 404, which is identical to Fed.R.Evid. 608, states in pertinent part:

> a. **Character evidence generally.** Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
>
> . . . .
>
> (3) **Character of witness.** Evidence of the character of a witness as provided in Rules 607, 608, and 13–90–101.

■ Although an accused who elects to testify on his own behalf does not thereby place his general character in issue, he does subject himself to an attack on his credibility in the same manner as any other witness. *E.g., United States v. Walker*, 313 F.2d 236 (6th Cir.), *cert. denied*, 374 U.S. 807, 83 S.Ct. 1695, 10 L.Ed.2d 1031 (1963); *People v. Neal*, 181 Colo. 341, 509 P.2d 598 (1973); Fed.R.Evid. 608 advisory committee's note; M. Graham, *Handbook of Federal Evidence* § 608.2 at 445–48 (2d ed. 1986); 2 J. Weinstein and M. Berger, *Weinstein's Evidence* ¶ 404[05] at 404–45 (1986). Here, the defendant took the witness stand to testify to his version of the facts leading up to his arrest. Therefore, it is appropriate for the prosecution to test the defendant's credibility. The judge was called as a rebuttal witness and, pursuant to CRE 608(a), his testimony as to

---

A [by Gaddis] The phone call I received I believe it was from Deena Raffe, she indicated they were going to recommend custody in—continued custody in Tylene; however, with increasing visitation for Ron over a period of time.

Q [by the prosecutor] Okay. Subsequent to that telephone call and before the 1st of

May, 1983, did you communicate that recommendation to Ronald Tippett.

MR. IRVIN [counsel for defendant]: Objection.

THE COURT: Overruled.

MR. IRVIN: Privileged.

THE COURT: Overruled.

A [by Gaddis] Yes, I did.

the character of the defendant for truthfulness was the appropriate method of attacking the defendant's credibility as a witness.

██ Many of the cases dealing with judges testifying as to matters in former proceedings in which they presided focus on whether a judge from a former trial may testify as to matters to which another witness testified at the former trial. *E.g., State v. Duffy,* 57 Conn. 525, 18 A. 791 (1889); *Brown v. State,* 76 Ga. 623 (1886); *Freeman v. Commonwealth,* 31 Ky.L. Rptr. 639, 103 S.W. 274 (1907); *State v. Hayward,* 109 N.H. 228, 248 A.2d 88 (1968); *Commonwealth v. Neff,* 149 Pa.Super. 513, 27 A.2d 737 (1942); *State v. Bixby,* 27 Wash.2d 144, 177 P.2d 689 (1947). Courts have ruled that a judgment cannot be proved by parol evidence, such as the testimony of a judge of a former trial, where the record is the best evidence, *e.g., Blue Mountain Iron and Steel Co. v. Portner,* 131 F. 57 (4th Cir.), *cert. denied,* 195 U.S. 636, 25 S.Ct. 793, 49 L.Ed. 355 (1904); *Rickard v. State,* 283 Ala. 534, 219 So.2d 363 (1969); *Hardeman v. State,* 94 Tex.Cr.R. 642, 252 S.W. 503 (1923); *State v. Lee,* 103 W.Va. 631, 138 S.E. 323 (1927), and such testimony is inadmissible to contradict or vary the terms of a judgment. *E.g., Fayerweather v. Ritch,* 195 U.S. 276, 25 S.Ct. 58, 49 L.Ed. 193 (1904); *Tung-Sol Lamp Works, Inc. v. Monroe,* 113 Vt. 228, 32 A.2d 120 (1943). However, the judge's testimony is admissible where the record is ambiguous, to identify the issues raised and decided in a former trial. *E.g., Schumert & Warfield v. Security Brewing Company,* 199 F. 358 (E.D.La.1912), *dismissed,* 202 F. 1023 (5th Cir.1913) (dismissed for failure of the appellants to print the record); *Gorham v. New Haven,* 79 Conn. 670, 66 A. 505 (1907). In Colorado, this court has held that it is contrary to public policy and convenience to permit a judge to be called as a witness to state the grounds upon which he decided the case. *Noland v. People,* 33 Colo. 322, 80 P. 887 (1905).

██ We turn to the Colorado Code of Judicial Conduct [hereinafter the Code] for

guidance. The Code is designed to assure that judges perform their duties in a manner that is above reproach and also that they conduct affairs before their court in such a way as to enhance the respect of the judiciary in the eyes of the public. *Smith v. Beckman,* 683 P.2d 1214 (Colo.App. 1984). C.J.C. Canon 2 states: "A judge should avoid impropriety and the appearance of impropriety in all his activities." Section B states:

> A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. He should not lend the prestige of his office to advance the private interests of others; nor should he convey or permit others to convey the impression that they are in a special position to influence him. *He should not testify voluntarily as a character witness.*

(Emphasis added.) The commentary to Canon 2 adds: "The testimony of a judge as a character witness injects the prestige of his office into the proceeding in which he testifies and may be misunderstood to be an official testimonial." Here, the record is devoid of reference to a subpoena for the judge's testimony. We agree with the Interim Advisory Committee on Judicial Activities in its Advisory Opinion No. 9, Code of Judicial Conduct for United States Judges, when it stated, "[T]he practice of judges appearing as character witnesses should be discouraged, but we agree that, if subpoenaed, a judge must respond to the subpoena." We are unable, on the basis of the record, to determine the voluntariness of the judge's character testimony and, in the absence of demonstrative prejudice against the defendant, decline to reverse the trial court's ruling.

## C.

██ The defendant contends that the trial court erroneously limited the defendant's presentation of evidence concerning the fitness of the custodial parents. A trial judge has broad discretion in determining whether tendered evidence meets the relevancy requirements of CRE 401, *People v.*

*Lowe,* 660 P.2d 1261 (Colo.1983), and the trial court's decision will not be reversed unless it is shown that there was an abuse of discretion. *People v. Schwartz,* 678 P.2d 1000 (Colo.1984); *People v. Cole,* 654 P.2d 830 (Colo.1982); *People v. Henry,* 195 Colo. 309, 578 P.2d 1041, *appeal dismissed,* 439 U.S. 961, 99 S.Ct. 445, 58 L.Ed.2d 419 (1978). In applying the legal principles to the evidence, there was no abuse of discretion on the part of the trial court in limiting the admission of evidence of the custodial parents' fitness. The defendant had a fair opportunity to present evidence that went to establish whether he had a reason to believe that the children were in danger in the custodial homes.

## VI.

The defendant next claims that the trial court erred in rejecting various instructions which he tendered. With regard to the violation of custody charge, the defendant's tendered Instructions No. 2 and 3 are identical and state:

Actual danger to a child's welfare is not necessary in order to justify one acting to preserve the child. It is sufficient that the defendants [sic] actions were based on the apparant [sic] necessity of the moment.

His right to act remains even though it may turn out that the appearances were false or that he was mistaken as to the extent of the real or actual danger.

If, from the appearances of the moment, the defendant had reasonable grounds for believing, and did believe that the danger to the child's welfare was present, he may legally act on such appearances.

The violation of custody statute contains an affirmative defense which states:

It shall be an affirmative defense either that the offender reasonably believed that his conduct was necessary to preserve the child from danger to his welfare, or that the child, being at the time more than fourteen years old, was taken away at his own instigation without enticement and without purpose to commit a criminal offense with or against a child. § 18–3–304(3), 8B C.R.S. (1986). Jury Instruction No. 14, given to the jury, stated:

It is an affirmative defense to the crime of violation of custody that the defendant reasonably believed that his conduct was necessary to preserve the child from danger to its welfare.

 In determining whether the jury has been informed of the defendant's theory of the case, all the instructions given must be considered together. *People v. Deadmond,* 683 P.2d 763 (Colo.1984); *Dennison v. People,* 161 Colo. 546, 423 P.2d 839 (1967). While it is well established law in Colorado that a defendant is entitled to an instruction on his theory of defense, it is also long recognized that it is not error for a trial court to refuse to give a defense theory instruction when the contents of that instruction is embodied in other instructions given by the court. *People v. Lee,* 199 Colo. 301, 607 P.2d 998 (1980); *People v. Sandoval,* 710 P.2d 1159 (Colo. App.1985). *See Bennett v. People,* 168 Colo. 360, 451 P.2d 443 (1969). We have examined the instructions given to the jury in this case and find that defendant's theory of defense is adequately encompassed within the instructions given to the jury.

## VII.

 The defendant challenges the method the trial court used to select the alternate juror at the conclusion of the trial. The defendant claims that selecting the alternate juror by lot violated section 16–10–105, 8A C.R.S. (1986), and Rule 24(e) of the Colorado Rules of Criminal Procedure, thereby denying the defendant trial by a fair and impartial jury of twelve. The defendant further contends that the method for selecting the alternate significantly changed the composition of the jury from the one selected and that this was not within the discretion of the trial court. While we agree that the trial court's method of selecting a juror was error, we hold that it was harmless error.

Section 16–10–105 states:

The court may direct that *a sufficient number of jurors in addition to the regular jury be called and impaneled to sit as alternate jurors.* Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties. Alternate jurors shall be drawn in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath, and shall have the same functions, powers, facilities, and privileges as the regular jurors. An alternate juror who does not replace a regular juror shall be discharged at the time the jury retires to consider its verdict. When alternate jurors are impaneled, each side is entitled to one peremptory challenge in addition to those otherwise allowed by law.

§ 16–10–105, 8A C.R.S. (1986) (emphasis added). Rule 24(e) of the Colorado Rules of Criminal Procedure is virtually identical to section 16–10–105, except for the addition of the requirement that "the court shall impanel at least one alternate juror in all felony and class one misdemeanor cases." [6] Section 16–10–105 and Crim.P. 24(e) establish an ordered procedure for using alternate jurors; the language of the statute makes it clear that the alternate juror is selected after the regular jurors and, thus, is the thirteenth juror. The rule mandates that *all* jurors be drawn in the same manner and are subject to the same examination and challenges, regardless of their ultimate status as regular juror or alternate juror. Jury selection procedures are left within the sound judicial discretion of the trial court. *Morgan v. People,* 624 P.2d 1331 (Colo.1981).

---

**6.** This sentence has since been deleted from the current rule, effective January 1, 1985. Crim.P. 24(e), 7B C.R.S. (1986 Supp.).

**7.** The defendant also claims that he was not granted six peremptory challenges for the twelve jurors and the one alternate selected. Under section 16–10–104, 8A C.R.S. (1986), the defendant is entitled to five peremptory challenges and under section 16–10–105, the defendant is entitled to an additional peremptory chal-

 The trial court erred in its method of selecting the alternate juror. However, the principle that error must be prejudicial to be reversible applies to the substitution of jurors after the commencement of the trial. *See People v. Howard,* 211 Cal. 322, 295 P. 333 (1930); *see also* 76 Am.Jur.2d *Trial* § 1096 (1975). "[T]he procedure by which the alternate juror was substituted in the place and stead of the regular juror was ... an irregularity which in no way substantially affected the defendant's rights." *People v. Howard,* 211 Cal. at 325, 295 P. at 334; *accord, Washington v. State,* 568 P.2d 301 (Okla.Crim. App.1977).[7]

 There is no claim by the defendant that the jurors selected were other than fair and impartial. The defendant's right was to a fair and impartial jury, not to a jury composed of any particular individuals. *People v. Howard,* 211 Cal. at 325, 295 P. at 334; *accord, People v. Evans,* 674 P.2d 975 (Colo.App.1983). We hold that the trial court's use of random selection to choose the alternate juror was error, but, in the absence of any prejudice demonstrated against the defendant, it was harmless error.

Accordingly, we affirm the defendant's conviction of violation of custody and set aside the judgment of conviction and the sentence for second degree kidnapping.

LOHR, J., specially concurs, and KIRSHBAUM, J., joins in the special concurrence.

ROVIRA, J., does not participate.

LOHR, Justice, specially concurring:

I join the opinion of the court except for part IV of that opinion. I concur in the result reached in part IV.

---

lenge for the alternate juror empaneled, for a total of six peremptory challenges. However, we cannot address the defendant's claim that he was denied the proper number of peremptory challenges due to the absence of any record regarding the voir dire. It is the defendant's duty to designate those portions of the record that he deems necessary for an appeal, and to see that the record is transmitted. *Till v. People,* 196 Colo. 126, 127, 581 P.2d 299, 300 (1978).

KIRSHBAUM, J., joins in this special concurrence.