The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

John JENNINGS, Defendant-Appellee.

No. 79SA543.

Supreme Court of Colorado,
En Banc.

Feb. 1, 1982.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Susan P. Mele, Asst. Atty. Gen., Lit. Sec., Denver, for plaintiff-appellant.

Kenneth T. Johnson, Jr., Glenwood Springs, for defendant-appellee.

DUBOFSKY, Justice.

On July 18, 1979 the defendant, John Jennings, was convicted in Garfield County District Court of child abuse resulting in serious bodily injury under section 18–6–401(1)(c), C.R.S.1973 (1978 Repl. Vol. 8).[1] Subsequently, the trial court granted the defendant's motion to dismiss based on the vagueness of the criminal child abuse statute. The People appealed the trial court's ruling,[2] and we reverse.

The child abuse charge arises from an incident which occurred on August 16, 1978. On that day, the defendant left work at about noon because he felt ill, went home,

---

1. At the time of the defendant's conviction child abuse resulting in serious bodily injury to the child was a class 3 felony, while all other instances of child abuse were classified as class 2 misdemeanors. Subsequent to the defendant's conviction section 18–6–401(7), C.R.S. 1973 (1978 Repl. Vol. 8) was amended to classify the offense of child abuse depending on the state of mind of the defendant and the extent of injury to the victim. For example, subsection

18–6–401(7)(a)(I), C.R.S.1973 (1981 Supp.) provides: "When a person acts knowingly, ... and the child abuse results in death to the child, it is a class 2 felony."

2. The People appealed the dismissal under section 16–12–102, C.R.S.1973, which mandates that the district attorney appeal a decision adjudging a statutory provision unconstitutional; under section 13–4–102(1)(b), C.R.S.1973, ap-

and dismissed the babysitter who was caring for his stepson, Jason, aged three, and his four-month-old daughter, Christina. The defendant testified that from the time he arrived home, Christina was "fussy." He attempted to calm her, then lay down and tried to take a nap, but the baby continued to cry. The defendant got up, checked Christina's diaper and tried to give her a bottle. She continued crying. The defendant testified that he was going to pick her up, but instead he struck her on the head with his open hand. The following colloquy regarding the slap took place at trial:

"Q. Okay. Now, how many times did you hit Christina?

A. One time.

Q. Why did you do that?

A. I don't know.

Q. Were you trying to punish her?

A. No, I wasn't trying to punish her.

Q. Do you think a four-month-old child knows the meaning of discipline?

A. No.

Q. Had you intended to slap her?

A. No.

. . . . .

Q. Did you mean to hurt her?

A. No.

Q. Did it ever occur to you, John, that by hitting a child that young in the face that it might cause serious bodily injury?

A. I never really gave it that much thought because I never wanted to hit my children anywhere. . . ."

Apparently as a result of the slap, Christina stopped breathing for a time, causing brain damage which resulted in blindness and arrested mental development. After the defendant's trial, on November 3, 1979, Christina died. The defendant stipulated before trial that Christina suffered serious bodily injury as a result of his single slap to her head. The only question for the jury was whether the slap resulting in brain damage constituted felony child abuse, defined under section 18–6–401(1)(c) as "knowingly, intentionally, or negligently, and without justifiable excuse," causing or permitting a child to be "abandoned, tortured, cruelly confined or cruelly punished." In response to the defendant's request for a bill of particulars, the prosecution alleged that the child had been "cruelly punished."

The jury found the defendant guilty of felony child abuse. The defendant filed a new trial motion and renewed his pre-trial motion to dismiss, which the court had taken under advisement. At a hearing on November 6, 1979, the court found the language "cruelly punished" unconstitutionally vague because of the subjective nature of the words "cruel" and "punish."

The People appeal the trial court's ruling on vagueness. We determine that the criminal child abuse statute is not vague and reverse the trial court's ruling.[3]

## I.

The vagueness challenge to the child abuse statute centers on the statutory phrase "cruelly punished."[4] The defendant argues that the words "cruel" and "punish," while they may have generally understood meanings in day-to-day usage, are, in the context of the child abuse statute, unclear and susceptible of subjective interpretation.

peal of a constitutional question is to this Court.

3. The trial court also granted the defendant's motion for a new trial based on inadequate jury instructions. Although the People objected to the new trial in the notice of appeal, the briefs filed by the People did not address the jury instruction issue and requested that the case be remanded for a new trial on the merits. We conclude that because the People conceded the issue on appeal, the case must be retried.

4. In *People v. Hoehl*, 193 Colo. 557, 568 P.2d 484 (1977) we upheld the child abuse statute against a vagueness challenge based on the language of section 18–6–401(1)(a) which provides that a person commits child abuse if he causes or permits a child to be "placed in a situation that may endanger the child's life or health. . . ." We construed the word "may" to mean a reasonable probability that the child's life or health will be endangered from the situation in which the child is placed.

The defendant contends that the absence of a statutory definition of these words forces jurors to import their subjective impressions as to what punishment is cruel. The defendant cites *State v. Meinert*, 225 Kan. 816, 594 P.2d 232 (1979), in which the Kansas Supreme Court, interpreting that state's criminal child abuse statute, stated:

> "Some persons do not believe in any form of corporal punishment and to them any such treatment would be unjustified. On the other hand, others may believe any correction, however severe, which produces temporary pain only, and no lasting injury or disfigurement, is justified. The statute can conceivably cover anything from a minor, spanking or slapping to severe beating depending upon the personal beliefs of the individual."

594 P.2d at 234–35.

At the outset, we note that the defendant's argument is a broad one, amounting to a contention that in light of the wide divergence in personal views as to what constitutes cruel punishment of a child, a statute which does not define in detail each act proscribed cannot delineate an enforceable standard. We disagree; the prohibition in the child abuse statute against cruel punishment is sufficiently precise to satisfy due process requirements.

This Court has on numerous occasions enunciated the standard a statute challenged on vagueness grounds must satisfy to accord due process. As a preliminary matter, a statute claimed to be impermissibly vague must be closely scrutinized. *E.g., People v. Hoehl*, 193 Colo. 557, 568 P.2d 484 (1977); *People v. Blue*, 190 Colo. 95, 544 P.2d 385 (1975). If a challenged statute is capable of alternate constructions, one of which is constitutional, the constitutional interpretation must be adopted. *E.g., People v. Garcia*, 197 Colo. 550, 595 P.2d 228 (1979); *People v. Hoehl, supra.*

A penal statute is unconstitutionally vague if it "forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess as to its meaning and differ as to its application...." *Connally v. General Construc-*

*tion Co.*, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); *People v. Johnson, et al.*, Colo., 638 P.2d 1 (1981); *People v. Cardwell*, 181 Colo. 421, 510 P.2d 317 (1973). Criminal statutes should be framed with sufficient clarity so as to inform the persons subject to them of the standards of conduct imposed and to give fair warning of which acts are forbidden. *Cline v. Frink Dairy Co.*, 274 U.S. 445, 47 S.Ct. 681, 71 L.Ed. 1146 (1927); *People v. Thatcher*, Colo., 638 P.2d 760 (1981); *People v. Johnson, et al., supra; People in the Interest of C.M.*, Colo., 630 P.2d 593 (1980); *People v. Garcia*, 189 Colo. 347, 541 P.2d 687 (1975); *People v. Heckard*, 164 Colo. 19, 431 P.2d 1014 (1967). The vagueness doctrine also seeks to minimize arbitrary and discriminatory enforcement of laws by providing police and prosecutors with clearly defined standards. *People v. Thatcher, supra; People v. Johnson, et al., supra; People in the Interest of C.M., supra; People v. District Court*, 185 Colo. 78, 521 P.2d 1254 (1974). Such standards serve as well to inform a court and jury whether a crime has been committed and proved. *People v. Thatcher, supra; People v. Johnson, et al., supra; People in the Interest of C.M., supra; People v. Heckard, supra.*

The vagueness standard, while frequently enunciated, is nevertheless difficult to apply. Here, the defendant's contention is that the distinction between mere "punishment" and "cruel punishment" is impermissibly vague. The distinction between the two centers on the meaning of the word "cruel." Webster's Third New International Dictionary (1961) defines "cruel" as "disposed to inflict pain, especially in a wanton, insensate, or vindictive manner," and "cruelly" as "so as to cause pain or hurt."

That a distinction can be made between permissible punishment and "cruel" punishment is supported by the traditional common law rule concerning parental discipline of children. At common law the parent of a minor child or one standing *in loco parentis* was privileged in using a reasonable amount of force upon a child for purposes

of safeguarding or promoting the child's welfare. *Bowers v. State*, 283 Md. 115, 389 A.2d 341 (Ct.App.1978); *Boyd v. State*, 88 Ala. 169, 7 So. 268–69 (1890); *W. LaFave & A. Scott, Handbook on Criminal Law* § 52, at 389–90 (1972); *Restatement of Torts (Second)* § 147(1); Paulsen, *The Legal Framework for Child Protection*, 66 *Colum. L.Rev.* 679 (1966). While at common law the precise test of what constituted permissible force varied from jurisdiction to jurisdiction, *see* Annot. 89 A.L.R.2d 396, as a general proposition, so long as the chastisement was moderate and reasonable in light of the child's age and condition, the misconduct being punished, the kind of punishment inflicted, the degree of harm done to the child and other relevant circumstances, the parent or custodian would incur neither civil nor criminal liability, even though identical behavior against a stranger would be grounds for an action in tort or prosecution for assault and battery or a similar offense. *See W. Prosser, Torts* § 27, at 136–37 (4th ed. 1971); *LaFave & Scott, supra*.

This common law privilege has been codified in Colorado in section 18–1–703(1)(a), C.R.S.1973 (1978 Repl.Vol. 8), which provides:

"The use of physical force upon another person which would otherwise constitute an offense is justifiable and not criminal under any of the following circumstances:

.      .      .      .      .

A parent, guardian or other person entrusted with the care and supervision of a minor or an incompetent person, . . . may use reasonable and appropriate physical force upon the minor or incompetent person when and to the extent it is reasonably necessary and appropriate to maintain discipline or promote the welfare of the minor or incompetent person."

*See also* Model Penal Code § 3.08.

The parental privilege to inflict moderate, reasonable and appropriate corporal punishment has never shielded from liability parental acts which cannot be justified as salutary discipline. Before the adoption of statutes specifically proscribing child abuse, "cruel and outrageous" treatment of a child defeated the parental privilege and subjected the parent to the penal sanctions normally applicable to the acts committed. Paulsen, *supra*, 66 *Colum.L.Rev.* at 686–87.

This discussion of the common law background to the present child abuse statute illustrates that rather than existing in a vacuum, the parental privilege set out in section 18–1–703(1)(a) and the definition of criminal child abuse in section 18–6–401 codify common law principles concerning the limits of permissible parental chastisement. As the Maryland Court of Appeals said in *Bowers v. State, supra* :

"Since the contours of the common law privilege have been subject for centuries to definition and refinement through careful and constant judicial decisionmaking, terms like 'cruel' or 'inhumane' and 'malicious' have acquired a relatively widely accepted connotation in the law."

389 A.2d at 348. *See* 89 A.L.R.2d 396.

In addition to the criminal sanctions in section 18–6–401, the General Assembly has enacted other statutes to prevent cruelty to children. They evidence the legislature's parallel intent to protect children from unwarranted abuse while permitting parents to discipline those in their charge within the limits of the traditional privilege. For example, Article 10 of the Children's Code, which concerns the reporting of child abuse to the proper authorities, defines abuse in section 19–10–103(1)(a) as "an act or omission . . . which seriously threatens the health or welfare of a child" including:

"(I) Any case in which a child exhibits evidence of skin bruising, bleeding, malnutrition, failure to thrive, burns, fracture of any bone, subdural hematoma, soft tissue swelling, or death. . . ."

Paragraph (b) of the same subsection provides:

"Nothing in this subsection (1) shall refer to acts which could be construed to be a reasonable exercise of parental discipline."

Child abuse may also trigger the commencement of proceedings to terminate the

parent-child relationship under Article 11 of the Children's Code, sections 19–11–101 through –110. In an action for termination of a parent-child relationship, criteria which support the determination that a parent is unfit include:

"(b) Conduct towards the child of a physically or sexually abusive nature;

. . . . .

(d) A single incident of life-threatening or gravely disabling injury or disfigurement of the child."

Section 19–11–105(2)(b) and (d).

Implicit in our decisions upholding as constitutionally sound the definition of child abuse in the termination of parental rights statute is the proposition that a meaningful distinction can be made between permissible discipline and abusive treatment. *See People in the Interest of C.S.*, Colo., 613 P.2d 1304 (1980); *People in the Interest of V.A.E.Y.H.D.*, 199 Colo. 148, 605 P.2d 916 (1980); *People in the Interest of D.A.K.*, 198 Colo. 11, 596 P.2d 747 (1979). In the context of a termination proceeding where the definition of child abuse is at issue we have recognized that "fundamental fairness does not require a statute to enunciate in all-encompassing examples, or exactly described acts, precisely how poorly a parent can treat a child before risking loss of parental rights." *People in the Interest of D.A.K., supra*, 596 P.2d at 751; *People in the Interest of C.S., supra*. While termination of parental rights actions are civil cases and distinguishable from this criminal prosecution, we scrutinize the child abuse standard at issue in these cases with special care, reasoning that "although no criminal sanction is involved, a serious and substantial parental interest is at stake, which in many, if not most, cases is as important to the parents as their freedom." *People in the Interest of D.A.K., supra*, 596 P.2d at 751.

■ Given the statutory and common law context in which the "cruelly punished"

language of section 18–6–401 is set, we are satisfied that this language is intelligible and capable of nonarbitrary enforcement. Although the criminal child abuse standard is enunciated in general terms, this is not a fatal flaw. Scientific exactitude in statutory language is not required as long as the statute meets the minimal requirements of due process. *Colo. Auto & Truck Wreckers v. Dept. of Rev.*, Colo., 618 P.2d 646, 651 (1980); *People v. Blue, supra*, 544 P.2d at 389. Moreover, as we noted in *Colo. Auto & Truck Wreckers*:

"There are reciprocal stresses present in statutory drafting. A statute must be sufficiently specific in order to give fair warning of the conduct prohibited and, simultaneously, sufficiently general to address the essential problem under varied circumstances and during changing times."

618 P.2d at 651. The relationship between parents or guardians and children is a delicate and complex one, and standards designed to regulate this relationship must necessarily provide some flexibility while at the same time effectuating the state policy of protecting children from abuse. *See Bowers v. State, supra*, 389 A.2d at 349–50.

II.

The defendant also argues that the mental state requirements in the statute are too broad to have meaning and that even if the mental states can be defined with sufficient clarity, the defendant did not have the mens rea required by the term "punished." At both the time of the defendant's act and when his trial was conducted, section 18–6–401 provided that child abuse is committed when a person "knowingly, intentionally, or negligently, and without justifiable excuse, causes or permits a child to be: ... (a) cruelly punished."[5] The defendant specifically argues that negligently causing cruel punishment is impossible to understand and therefore unconstitutionally vague. However, in *People v. Taggart*, Colo., 621 P.2d 1375 (1981), we ruled that the inclusion of

---

**5.** Section 18–6–401(1) has since been amended to add "recklessly" to the mental states applicable to commission of child abuse. Colo.Sess.

Laws 1980, Ch. 93 18–6–401 at 544–45. *See* section 18–6–401(1), C.R.S.1973 (1981 Supp.).

"negligently" as a state of mind in section 18–6–401 does not render the child abuse statute unconstitutionally vague:

> "[A] person may negligently cause or permit a child to be placed in a situation so debilitating to the child's physical well-being that a reasonable juror, looking at the effect of the offender's conduct on the child, would consider it torture or cruel punishment. The term 'negligently' is not irreconcilably at odds with 'tortured' and 'cruelly punished', and the statutory definition of child abuse is sufficiently particular as to furnish adequate notice to potential wrongdoers of the proscribed conduct and to protect against discriminatory enforcement [citations omitted]."

621 P.2d at 1375. *See People v. Noble*, Colo., 635 P.2d 203, 210 (1981).

In addition, we note that the child abuse statute proscribes acts of mistreatment which include inaction as well as action. The inclusion of a range of states of mind can deal, for example, with a parent who "negligently ... permits" a child to be abused in some way. *See State v. Zobel*, 81 S.D. 260, 134 N.W.2d 101 *cert. denied* 382 U.S. 833, 86 S.Ct. 74, 15 L.Ed.2d 76 (1965) (father who had never actively mistreated two infant daughters convicted of child abuse for leaving them with his insane wife, who he knew beat them and deprived them of food, and who eventually killed them). *See also People v. Strohm*, 185 Colo. 260, 523 P.2d 973 (1974).

The defendant's argument that "punished" implies a mens rea which he did not possess is also without merit. As we made clear in *People v. Taggart, supra*:

> " 'Tortured' and 'cruelly punished' do not refer to the *mens rea* of the crime of child abuse. Rather, these words refer to the *actus reus* as measured by the consequences wrought on the child."

621 P.2d at 1383. The defendant's testimony that he did not mean to punish Christina does not preclude a jury from finding that he caused her to be "cruelly punished."

Reversed and remanded for a new trial.