**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Robert Allen SCHOONDERMARK, Defendant-Appellant.**

**No. 84SA99.**

Supreme Court of Colorado, En Banc.

May 6, 1985.

Rehearing Denied May 28, 1985.

---

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard Forman, Sol. Gen., Dolores Atencio, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Claire Levy, Deputy State Public Defender, Denver, for defendant-appellant.

KIRSHBAUM, Justice.

Defendant, Robert Allen Schoondermark, appeals his jury conviction of assault in the second degree under section 18–3–203(1)(f), 8 C.R.S. (1978).[1] Because defendant asserts that this statute violates due process protections guaranteed by the United States and Colorado Constitutions, the appeal has been transferred to this court. *See* §§ 13–4–102(1)(b), –110(1)(a), 6 C.R.S. (1973). We affirm.

## I

On February 27, 1981, at approximately 2:00 a.m., the Fort Collins Police Department received a telephone call from Sharon Podein, reporting unidentified noises in her backyard and at the doors of her house. Police Officers Goodwin and Groves responded to the call within minutes. As Officer Goodwin entered the backyard, he observed someone entering the house through the back door. Officer Goodwin opened the screen to that door and observed defendant standing on stairs which led to a basement apartment. In response to the officer's questions, defendant stated that he was going down the stairs to visit his girlfriend. When Podein informed the officers that no one other than herself resided in the house, defendant was arrested and handcuffed. Defendant resisted the officers' efforts to handcuff him, but was transported to the Larimer County Sheriff's Office without further incident.

Defendant initially was taken to a booking room by Officer Goodwin and Sergeant Murphy. When defendant refused to provide his social security number or his place of employment, the two officers decided to take him to another room. However, when they attempted to leave the booking room, defendant placed his left foot on the door, thus preventing it from swinging inward. Officer Goodwin placed defendant against a wall and asked him to cooperate. The officers again tried to remove defendant from the booking room, but defendant placed his foot against the door and began twisting from side to side. The officers ultimately forced defendant through the door and into the adjacent hall.

As they entered the hall, defendant, according to Officer Goodwin's testimony, "began to struggle violently ... [and] to twist his body ... back and forth." As a result, defendant's arms came into contact with the officers.[2] The officers then

---

1. Section 18–3–203(1)(f) has been amended. *See* § 18–3–203(1)(f), 8 C.R.S. (1984 Supp.).

Defendant was also charged by information with first degree criminal trespass, but the jury was unable to reach a verdict as to this charge. The trial judge declared a mistrial as to this count.

2. Officer Goodwin testified that when defendant was "turning his body back and forth, trying to get away" defendant's arms came in contact with Officer Goodwin's hands, arms and chest. On cross-examination, Officer Goodwin testified that physical force was applied by the defendant at various times, as follows:

Again, it happened in the booking room when he was refusing to walk through the doorway. He was putting his foot against the doorway and leaning his body against us.... He was bracing himself against the door and leaning back against us, refusing to walk through.

....

Q. [defense attorney] Thank you.

What was the next incident where he applied force to your particular person?

A. [Officer Goodwin] Again, the same thing. When I asked him to cooperate and we tried to get him to go through the doorway again he did the same thing.

Q. Okay.

And then the next time after that?

A. When—when we—when he went to the—to the floor, he began to struggle.

Q. Okay.

In what way did he apply force to your body?

A. Oh, by the actions of trying to get away from us, turning—turning his body back and forth, trying to get away.

Q. What part of his body came into contact with your body?

A. His—his arms.

Q. His arms came in contact with what?

A. With my hands, and my arms, and my chest.

Q. Okay.

And at that time, of course, your hands were already on his arms; is that correct?

A. That's correct.

Q. Was there any other force applied to you by the defendant?

A. It continued from the time he was on the floor until it ended and when we put him in the holding cell.

pushed defendant to the ground and, in spite of defendant's continued struggling, dragged him down the hall and into another room.

As another officer attempted to remove items of personal property from defendant, defendant continued to struggle and began kicking out with his legs. Officer Goodwin, Sergeant Murphy and a deputy sheriff then sat on defendant while a fourth officer removed certain property from defendant's person. Defendant's legs were then shackled and he was placed in a holding cell. Defendant's kicks did not come in contact with any of the officers, and no one was injured by defendant's conduct.

## II

Defendant first contends that the evidence is insufficient to sustain a conviction of second degree assault under the provisions of section 18–3–203(1)(f), 8 C.R.S. (1978).[3] Although defendant concedes in his brief that he did struggle, "possibly violently," he argues that his conduct could not be deemed to constitute an application of physical force against the officers.[4] We disagree.

> Sergeant Murphy testified that when he and Officer Goodwin attempted to take defendant through the security door he "began violently resisting us at that point, putting his foot up against the doorjamb to prevent us from going through the doorway." The following colloquy then occurred:
>
> Q. [prosecutor] What kind of actions were taken to get out of that room and into the hallway?
> A. At that point, Officer Goodwin pushed [defendant] up against the wall and chided him to cooperate and things would go a lot easier. [Defendant] did not cooperate. It took both of us, one on each arm, to force him through the doorway. He kept putting his feet up against the doorway and violently jerking his body side to side.
> Q. Where—did he come into contact with either of you when he did that?
> A. Oh, yes, definitely.

**3.** Defendant also argues that his conduct "more closely resembles" that proscribed by § 18–8–104, 8 C.R.S. (1978), which provides that a person commits a class 2 misdemeanor for obstructing a peace officer when "by using or threatening to use violence, force, or physical

In determining whether the evidence supports a conviction, we must be guided by the principle that the verdict of the jury must be sustained if there is substantial evidence, taken in the light most favorable to the prosecution, to support it. *People v. Gonzales*, 666 P.2d 123 (Colo. 1983); *Bennett v. People*, 155 Colo. 101, 392 P.2d 657 (1964). Defendant does not seriously dispute the fact that he struggled violently with Officer Goodwin, Sergeant Murphy and two deputy sheriffs who assisted in restraining him. The testimony of Officer Goodwin and Sergeant Murphy, to the effect that defendant's arms came in contact with them during the various struggles, is sufficient to support the jury's verdict.

The statute requires only that, with knowledge,[5] the defendant "violently applies physical force against the person of a peace officer." It does not require the infliction of either injury or pain, and does not specify the magnitude of the force which is proscribed.[6] While different conclusions could certainly be drawn from the record, we conclude that sufficient evidence was introduced to permit the jury to

interference, or obstacle, he knowingly obstructs, impairs, or hinders the enforcement of the penal law." *See People v. Shockley*, 41 Colo. App. 515, 591 P.2d 589 (1978) (when a jailer attempted to empty a prisoner's pockets, a scuffle ensued, and the jailer fell through a plate glass window). Defendant, however, does not challenge his conviction on equal protection grounds.

**4.** Although defendant testified in his own defense at trial, his testimony was limited to an explanation of his presence at the Podein residence.

**5.** In *People v. Hart*, 658 P.2d 857 (Colo.1983), this court held that the mental state of "knowingly" is implied by the statute and is required for a conviction of second degree assault on a police officer under § 18–3–203(1)(f), 8 C.R.S. (1978).

**6.** A conviction under the first degree assault statute, § 18–3–202(1)(e), 8 C.R.S. (1978), on the other hand, requires proof of "intent to cause serious bodily injury upon the person of a peace officer."

conclude that defendant violently applied physical force against the officers.

Defendant refers to several decisions in support of his argument that section 18–3–203(1)(f) requires the application of force rather than a mere attempt to apply force. *See, e.g., People v. Hart,* 658 P.2d 857 (Colo.1983); *People v. Wieder,* 693 P.2d 1006 (Colo.App.1984); *People v. Saiz,* 660 P.2d 2 (Colo.App.1982); *People v. Walker,* 634 P.2d 1026 (Colo.App.1981); *People v. Mason,* 632 P.2d 616 (Colo.App.1981); *People v. Gibson,* 623 P.2d 391 (Colo.App. 1981); *People v. Olinger,* 39 Colo.App. 491, 566 P.2d 1367 (1977). Defendant's argument is correct; the application of physical force is required. However, his argument that the evidence in this case establishes only an attempt to apply force is refuted by the record. That defendant's use of his arms as a vehicle to inflict harm on the officers did not result in injury does not refute the fact that by his conduct he did apply force to the officers.

### III

■ Defendant also argues that section 18–3–203(1)(f) is unconstitutionally vague, in violation of the Due Process Clauses of the Colorado and United States Constitutions. We disagree.

■ Although a statute claimed to be impermissibly vague must be closely scrutinized, *see People v. Jennings,* 641 P.2d 276 (Colo.1982); *People v. Hoehl,* 193 Colo. 557, 568 P.2d 484 (1977); *People v. Blue,* 190 Colo. 95, 544 P.2d 385 (1975), every statute is presumed to be constitutional, *People v. Enea,* 665 P.2d 1026 (Colo.1983); *People v. Garcia,* 189 Colo. 347, 541 P.2d 687 (1975); *People ex rel. Russel v. District Court,* 185 Colo. 78, 521 P.2d 1254 (1974); *Howe v. People,* 178 Colo. 248, 496 P.2d 1040 (1972), and the party attacking the statute has the burden of proving it unconstitutional beyond a reasonable doubt. *Enea,* 665 P.2d 1026; *People v. Caponey,* 647 P.2d 668 (Colo.1982); *People v. Beruman,* 638 P.2d 789 (Colo.1982); *Bollier v. People,* 635 P.2d

543 (Colo.1981); *People v. Brown,* 632 P.2d 1025 (Colo.1981). Moreover, if a challenged statute is capable of several constructions, one of which is constitutional, the constitutional construction must be adopted. *Jennings,* 641 P.2d 276; *People v. Garcia,* 197 Colo. 550, 595 P.2d 228 (1979); *Hoehl,* 193 Colo. 557, 568 P.2d 484.

■ The Due Process Clauses of the United States Constitution, U.S.Const. amend. XIV, and of the Colorado Constitution, Colo.Const. art. II, § 25, require specificity in criminal laws so as to give fair warning of the proscribed conduct. A penal statute is unconstitutionally vague if it "forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess as to its meaning and differ as to its application." *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926); *see Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Enea,* 665 P.2d 1026; *People v. Castro,* 657 P.2d 932 (Colo.1983); *People v. Allen,* 657 P.2d 447 (Colo.1983); *People ex rel. City of Arvada v. Nissen,* 650 P.2d 547 (Colo.1982); *Jennings,* 641 P.2d 276; *People v. Thatcher,* 638 P.2d 760 (Colo.1981); *People v. Smith,* 638 P.2d 1 (Colo.1981). The Due Process Clauses also seek to limit arbitrary and discriminatory enforcement of laws by requiring sufficiently clear and defined standards which are capable of fair application by police, prosecutors, judges and juries. *See Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605; *Grayned,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222; *Castro,* 657 P.2d 932; *Allen,* 657 P.2d 447; *Nissen,* 650 P.2d 547; *Jennings,* 641 P.2d 276; *Thatcher,* 638 P.2d 760; *Smith,* 638 P.2d 1. Thus, statutes satisfy due process of law requirements if their terms "are sufficiently clear to persons of ordinary intelligence to afford a practical guide for law-abiding behavior and are capable of application in an even-handed manner by

those responsible for enforcing the law." *Nissen,* 650 P.2d at 551.

Defendant contends that the statutory words "violently" and "force" lack sufficient precision to satisfy constitutional due process standards—that they are too vague to permit adequate understanding of the conduct prohibited. This court, however, has repeatedly noted that a criminal statute need not contain precise definitions of every word or phrase constituting an element of the offense. *Castro,* 657 P.2d 932; *Nissen,* 650 P.2d 547; *Blue,* 190 Colo. 95, 544 P.2d 385.

The word "violent" has been defined as "characterized by extreme force; marked by abnormally sudden physical activity and intensity; furious or vehement to the point of being improper, unjust or illegal." *Webster's Third New International Dictionary* (ed. 1976). "Violently" has been defined as "by the use of force; forcibly; with violence." *Black's Law Dictionary* (5th ed. 1979). "Force" has been defined as "power, violence, compulsion, or constraint exerted upon or against a person or thing; strength or power of any degree that is exercised without justification or contrary to law against a person or thing." *Webster's Third New International Dictionary* (ed. 1976).[7] Persons of reasonable intelligence could conclude that the statutory language prohibits abnormally sudden and intense use of physical strength against a peace officer. The defendant did suddenly apply what strength he had against Officer Goodwin and Sergeant Murphy in the hallway of the Larimer County Sheriff's Office. That the defendant could muster little strength and was himself constrained does not permit the conclusion that the application of the statute to his conduct deprives him of due process of law.

Judgment affirmed.

---

7. Several provisions of the Criminal Code prohibit or allow the use of "physical force" or "physical violence" without specifically defining these terms. *See, e.g.,* §§ 18–1–703 to –707, 8 C.R.S. (1978 & 1984 Supp.); § 18–3–301, 8 C.R.S. (1978); § 18–3–402, 8 C.R.S. (1978 & 1984 Supp.).