23CA1544 Peo v Archuleta 04-30-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1544
Lincoln County District Court No. 20CR118
Honorable H. Clay Hurst, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Phillip Archuleta,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE GROVE
Yun, J., concur
Taubman*, J., dissents

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 30, 2026

Philip J. Weiser, Attorney General, Wendy J. Ritz, First Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Madeline Dobkin, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3) and § 24-51-1105, C.R.S. 2025.

¶ 1    Defendant, Phillip Archuleta, appeals the judgment of conviction after a jury found him guilty of second degree assault. We affirm.

## I.    Background

¶ 2    A reasonable jury could have found the following facts based on the evidence presented at trial.

¶ 3    Archuleta was housed on the second floor of the Limon Correctional Facility. During a routine search of his cell by correctional officers Stephen Van Camp, Steven Zamora, and Emanuel Lopez, Archuleta was ordered to go downstairs to the first floor. According to Zamora, Archuleta initially refused to comply and threatened to "beat [up] all three" officers.

¶ 4    Archuleta eventually went downstairs. The three officers followed and ordered him to turn around to be restrained. Zamora testified that Archuleta again refused to comply, prompting Van Camp to pepper spray Archuleta in the face. Archuleta then attempted "to deliver closed-hand strikes to Officer Van Camp." Van Camp and Zamora responded by pepper spraying him again. Van Camp then grabbed Archuleta around the waist, and the two

struggled for several seconds before Archuleta shoved Van Camp into a trash can and to the ground.

¶ 5 According to Archuleta, however, he never punched, pushed, or otherwise applied physical force to Van Camp. Rather, he contends that he was flailing his arms blindly as the officers pepper sprayed him, and that Van Camp stumbled into the trash can and fell because of the commotion. In any event, shortly thereafter, Archuleta dropped to the floor, and the officers restrained him. The entire incident was captured on surveillance video.

¶ 6 Archuleta was charged with second degree assault against Van Camp under section 18-3-203(1)(f), C.R.S. 2025.[1] The jury found him guilty as charged, and he was sentenced to eight years in the custody of the Department of Corrections.

¶ 7 Archuleta now appeals, arguing that (1) the evidence presented at trial was insufficient to sustain his conviction; (2) the prosecution committed misconduct during closing argument; (3) the

---

[1] Archuleta was also charged with second degree assault against Van Camp under section 18-3-203(1)(c), C.R.S. 2025, but this charge was later dismissed on the prosecution's motion.

court gave erroneous jury instructions; and (4) the cumulative effect of these errors deprived him of a fair trial.

## II. Sufficiency of the Evidence

¶ 8 Archuleta contends that the evidence presented at trial was insufficient to sustain his second degree assault conviction. We disagree.

### A. Standard of Review and Applicable Law

¶ 9 Archuleta's contention must overcome a "daunting standard" because "we construe the record in the light most favorable to the prosecution to determine whether any rational juror could have found guilt proven beyond a reasonable doubt." *People v. McBride*, 228 P.3d 216, 226 (Colo. App. 2009). We review sufficiency of the evidence claims de novo. *McCoy v. People*, 2019 CO 44, ¶ 19.

¶ 10 As relevant here, a person commits second degree assault if,

¶ 11 while lawfully confined or in custody as a result of being charged with or convicted of a crime . . . he or she knowingly and violently applies physical force against a person engaged in the performance of his or her duties while employed by or under contract with a detention facility.

3

§ 18-3-203(1)(f). Archuleta contests the sufficiency of the evidence supporting two elements, arguing that the prosecution failed to prove that (1) he applied physical force, and (2) he did so while confined as a result of being convicted of a crime.

## B.    Physical Force

The record contains sufficient evidence to support a finding that Archuleta applied physical force against Van Camp.

Only two witnesses testified at trial: a Colorado Department of Corrections investigator, who authenticated the surveillance footage, and Zamora, who provided the only eyewitness account.

We are "in the same position as the trial court" to review video evidence. *People v. Ramadon*, 2013 CO 68, ¶ 21. Our independent review of the surveillance footage supports the jury's finding that Archuleta "applied physical force" against Van Camp. Among other things, the footage shows Archuleta (1) swinging at Van Camp with a closed fist at least twice; (2) tussling with Van Camp after Van Camp grabs Archuleta around the waist; and (3) pushing Van Camp into a trash can, after which Van Camp falls to the floor. In the screen capture from the video below, Archuleta — who is wearing a white shirt — can be seen with his arms extended and still in

contact with Van Camp as Van Camp falls toward the trash can and the floor.



Screen Capture of the Incident from Surveillance Video

This is sufficient evidence for a reasonable jury to conclude Archuleta "applied physical force." *See People v. Schoondermark*, 699 P.2d 411, 414 (Colo. 1985) (officer testimony that the defendant's "arms came in contact" with the officers was sufficient to support a conviction of second degree assault against a peace officer).

## C. Criminal Conviction

¶ 16     We likewise conclude that the evidence was sufficient to support the jury's finding that Archuleta was lawfully confined "as a result of having been convicted of a crime."[2]

¶ 17     At trial, the parties stipulated that "Mr. Archuleta was lawfully confined in a detention facility," specifically, "Limon Correctional Facility." In addition, at defense counsel's request, the district court instructed the jury that it "may not assume that Mr. Archuleta is more likely to be guilty of the charged offense because he was incarcerated at the time the allegations occurred." Together, the parties' stipulation and the court's instruction permitted the jury to reasonably infer that Archuleta's lawful confinement resulted from a criminal conviction. *Cf. Martin v. People*, 738 P.2d 789, 794 (Colo. 1987) (evidence of the defendant's prior conviction was relevant to establish lawful confinement).

¶ 18     Further reinforcing this inference, the prosecutor, defense counsel, and both witnesses repeatedly referred to those

---

[2] The People contend that Archuleta invited or waived any error. Because we conclude sufficient evidence supports the jury's finding that Archuleta was lawfully confined as a result of having been convicted of a crime, we do not address this argument.

6

incarcerated at Limon Correctional Facility as "offenders" and to Archuleta specifically as "Offender Archuleta." Although no witness explicitly said that Archuleta was lawfully confined due to a conviction, the consistent use of the term "offender" supports a reasonable inference that Archuleta, like the other inmates, was housed in a correctional facility as a result of a prior criminal conviction.

¶ 19  Finally, defense counsel questioned prospective jurors about Archuleta's incarceration when the charged offense occurred. During voir dire, defense counsel asked jurors whether anyone believed Archuleta was guilty because "he was serving a sentence in the Department of Corrections when this happened." This admission demonstrates the lack of real dispute over the fact of Archuleta's prior conviction.

¶ 20  Accordingly, the jury could reasonably infer that Archuleta was incarcerated at the Limon Correctional Facility "as a result of having been convicted of a crime." Therefore, the evidence was sufficient to sustain Archuleta's conviction. *See People v. Grant*, 174 P.3d 798, 812 (Colo. App. 2007) ("If there is evidence upon

which one may reasonably infer an element of the crime, the evidence is sufficient to sustain that element.").

### III.    Prosecutorial Misconduct

¶ 21     Archuleta contends that the district court plainly erred by allowing the prosecutor to misstate the law on the physical force element of second degree assault.  We conclude that although the prosecutor's statements may have been improper, the error is not substantial enough to cast doubt on the reliability of the conviction.  Therefore, the error does not require reversal under plain error review.

### A.    Standard of Review and Applicable Law

¶ 22     Prosecutors have "wide latitude in the language and presentation style used to obtain justice."  *Domingo-Gomez v. People*, 125 P.3d 1043, 1048 (Colo. 2005).  During closing argument, they may argue facts in evidence, reasonable inferences drawn from those facts, and the law on which the jury has been instructed.  *Id.*  At the same time, prosecutors have a fundamental duty to "avoid comments that could mislead or prejudice the jury."  *Id.* at 1049.  As relevant here, a prosecutor may not distort the elements of the charged offense.  *McBride*, 228 P.3d at 224.

¶ 23     We analyze claims of prosecutorial misconduct by determining whether the conduct was improper based on the totality of the circumstances and whether the conduct warrants reversal under the applicable standard of review. *People v. Nardine*, 2016 COA 85, ¶ 36. When, as here, defense counsel does not object to the challenged conduct at trial, we reverse only if the conduct rises to the level of plain error. *Id.* at ¶ 37. To rise to the level of plain error, prosecutorial misconduct must be flagrant or glaring or tremendously improper and so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *People v. Weinreich*, 98 P.3d 920, 924 (Colo. App. 2004), *aff'd*, 119 P.3d 1073 (Colo. 2005). "Prosecutorial misconduct in closing argument rarely constitutes plain error." *People v. Smalley*, 2015 COA 140, ¶ 37.

## B.     Additional Background

¶ 24     Before closing arguments, the district court instructed the jury on the six elements of second degree assault under section 18-3-203(1)(f). As relevant here, the jurors were instructed that they would need to find that Archuleta "knowingly and violently . . . applied physical force" against Van Camp to find him guilty.

¶ 25    In closing argument, the prosecutor reviewed the evidence against Archuleta as it applied to each element, telling the jurors that there "must be the application of physical force against [Officer] Van Camp," and later explained why Archuleta's actions were both knowing and violent:

> Swinging closed fists, landing or not, that's violent.  Funny story: Those elements didn't say any lack of punch.  Didn't say that had to be (indiscernible).  Knowingly and violently.  If closing your fist and swing [sic] on an officer isn't violent, that's a determination you'll have to make.

¶ 26    Defense counsel did not object but addressed this argument in his own closing, saying that "[the prosecutor] indicated [that] attempted contact equals violence" while countering that "[j]ust because he swung doesn't equal exact violence."  Defense counsel reiterated that "[t]he jury instructions here specify that [Archuleta] must have knowingly and violently applied physical force" against Van Camp.  Defense counsel also rhetorically asked the jury, "At what point in that video does Mr. Archuleta make contact?"

¶ 27    The prosecutor responded to this argument in rebuttal closing, returning to the elements of second degree assault:

The defense's theory: Trust the argument, not the evidence. Decide the case based on implications of arguments, not the evidence. This is not a case charged on excessive use of force, wrong form of use of force, whether or not somebody was trained or not trained or just could have made better choices. This is a charge against Mr. Archuleta. Did he knowingly and violently act towards a member of staff? That's it. Didn't have to punch, didn't have to kick, didn't have to stab, didn't have to shoot. He had to knowingly and violently act towards a member of staff. It's very not specific that the defense seems to argue.

It is about Mr. Archuleta: Did he knowingly and violently while in custody, confined to the detention facility, do what he shouldn't have done against a staff member, any staff member?

That's the choice. That's the question. It's the one question applied against these six parts of that question. That's it. You don't have to make decisions on everything else.

Again, defense counsel did not object.

## C.    Analysis

¶ 28    Archuleta contends that the prosecutor misstated the law by telling the jury that the "physical force" element of the second degree assault charge could be satisfied without actual physical contact. We need not consider the propriety of this statement or the obviousness of any error because, in light of all the evidence

11

presented at trial, any misconduct did not so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. We reach this conclusion for three reasons.

¶ 29 First, when reviewed in context, the prosecutor's statements implying that physical contact may not be necessary could have been understood as a reference to the "violently" element of second degree assault. Indeed, in the excerpts above, the prosecutor first told the jury that there "must be the application of physical force against [Officer] Van Camp" and then, three lines of transcript later, appeared to argue that Archuleta acted violently by "swinging closed fists," even if those punches did not make contact with Van Camp. While the juxtaposition of these statements may have muddled the distinction between the elements, we must accord the prosecution the benefit of the doubt. *See People v. Samson,* 2012 COA 167, ¶ 30 ("[B]ecause arguments delivered in the heat of trial are not always perfectly scripted, reviewing courts accord prosecutors the benefit of the doubt when their remarks are ambiguous or simply inartful.").

12

¶ 30     Second, the prosecutor himself told the jury during closing that Archuleta had to have applied physical force to be found guilty, and the district court correctly instructed the jury that second degree assault requires the application of physical force.  It did so twice, before closing arguments and in the instruction packet distributed after closing argument.  *People v. Cuellar*, 2023 COA 20, ¶¶ 76-77 (prosecutor's error in closing argument was harmless in part because of the court's proper instructions).  Further, in his own closing argument, defense counsel rebutted any improper statement by the prosecutor by emphasizing that the "physical force" element does require physical contact.

¶ 31     Archuleta maintains that, because the court did not define "applied physical force," the prosecutor's argument was the only definition the jury received.  However, we assume that "[p]ersons of reasonable intelligence" use common sense to understand the "applied physical force" element.  *Schoondermark*, 699 P.2d at 416.  A reasonable juror would understand that applying physical force requires actual physical contact, especially considering the totality of the circumstances (i.e., the prosecutor's correct statement that Archuleta had to apply physical force, the court's correct

13

instruction that the application of physical force was required, and the defense's closing argument that emphasized physical force must include contact).

¶ 32     Third, our review of the record reveals overwhelming evidence that Archuleta *did* apply physical force to Van Camp. *See People v. Fichtner*, 869 P.2d 539, 543 (Colo. 1994) ("[I]f there is overwhelming evidence to support the conviction, we will not reverse it under a plain error standard."). As discussed, the central evidence in this case was the surveillance video. The footage plainly shows Archuleta applying physical force to Van Camp when he shoved him into the trash can. *See Schoondermark*, 699 P.2d at 414 (holding that evidence that "defendant's arms came in contact with [the arresting officers] during [his] various struggles" with the officers was sufficient to support a finding that he had applied physical force). Thus, even if the jury were to conclude that Archuleta's punches earlier in the confrontation did not make contact, and even if it were to also find that Archuleta was not applying physical force when he and Van Camp began tussling, the shove that propelled Van Camp into the trash can and then onto the floor provides overwhelming evidence that Archuleta applied physical force.

14

¶ 33     Under these circumstances, even if the prosecutor could have better distinguished between the elements of the offense, his failure to do so does not convince us that the error was substantial enough to cast serious doubt on the reliability of the verdict.  Therefore, any misconduct does not warrant reversal under plain error review.

## IV.   Jury Instruction

¶ 34     Archuleta also contends that the district court erred by omitting part of the jury instruction for second degree assault.  We agree but conclude that the error does not require reversal under plain error review.

### A.     Additional Background

¶ 35     The district court instructed the jury on the elements of second degree assault as follows:

> 1. That Mr. Phillip Archuleta,
>
> 2. in the State of Colorado, at or about the date and place charged,
>
> 3. knowingly and violently,
>
> 4. *while lawfully confined or in custody,*
>
> 5. applied physical force against the person of a peace officer engaged in the performance of his duties while employed by or under contract with a detention facility, and

15

> 6. the defendant knew, or reasonably should have known, that the victim was a . . . person engaged in the performance of his duties while employed by or under contract with a detention facility.

(Emphasis added.)  Defense counsel did not object to the instructions.

¶ 36     In contrast to this instruction, the complaint alleged that Archuleta knowingly and violently applied physical force against Van Camp "while lawfully confined or in custody *as a result of having been convicted of a crime*."  (Emphasis added.)  The italicized language — omitted from the instruction — mirrors section 18-3-203(1)(f), which requires a defendant to be "lawfully confined or in custody as a result of being charged with or convicted of a crime."  This language also appears in the model jury instruction. *See* COLJI-Crim. 3-2:14 (2025) ("The elements of the crime of assault in the second degree" include "while lawfully confined or in custody as a result of being charged with or convicted of a crime.").

¶ 37     The district court has a duty to correctly instruct the jury on all matters of law.  *People v. Garcia*, 28 P.3d 340, 343 (Colo. 2001).  We review jury instructions de novo to determine whether an instruction accurately informed the jury of the governing law.

16

*People v. Trujillo*, 2018 COA 12, ¶ 11.  When, as here, defense

counsel did not object to an instruction challenged on appeal, we

will reverse only if the instruction amounts to plain error.  *See*

*Hagos v. People*, 2012 CO 63, ¶ 14.  "[R]eversal under a plain error

standard requires a defendant to 'demonstrate not only that the

instruction affected a substantial right, but also that the record

reveals a reasonable possibility that the error contributed to his

conviction.'"  *Garcia*, 28 P.3d at 344 (citation omitted).

## B.    Analysis

¶ 38    Because defense counsel did not object to the instruction, we

review this issue for plain error.[3]  *See People v. Rediger*, 2018 CO

32, ¶ 40.

¶ 39    The elemental jury instruction for second degree assault was

incomplete because it told the jurors that they could find Archuleta

---

[3] We reject the People's contention that Archuleta waived his claim or invited the error.  The prosecutor drafted the jury instruction that omitted the phrase "as a result of being convicted of a crime" from the elements of second degree assault.  That defense counsel agreed to the instruction does not indicate that Archuleta injected the error (as required for invited error) or intentionally relinquished a known right or privilege (as required for waiver).  *See People v. Rediger*, 2018 CO 32, ¶¶ 37, 42 (defendant did not waive or invite error when he "generally acquiesced to the jury instructions" tendered by the People).

guilty if they concluded that he was "lawfully confined or in custody" while omitting the phrase "as a result of having been convicted of a crime." As a result, the instruction was erroneous. *See id.* at ¶¶ 49-52 (elemental instruction was erroneous when it did not track the statute cited in the criminal information). However, the record does not reveal "a reasonable possibility that the error contributed to [Archuleta's] conviction." *Garcia*, 28 P.3d at 344 (citation omitted). To the contrary, and as we have already discussed, there was no real dispute that Archuleta was confined at the Limon Correctional Facility as a result of having been convicted of a crime.

¶ 40    Accordingly, we conclude the error does not warrant reversal under plain error review. *See People v. Miller*, 113 P.3d 743, 750 (Colo. 2005) ("[A]n erroneous jury instruction does not normally constitute plain error where the issue is not contested at trial or where the record contains overwhelming evidence of the defendant's guilt.").

## V.    Cumulative Error

¶ 41    Lastly, Archuleta contends that the cumulative effect of the alleged errors deprived him of a fair trial, thus requiring reversal of his conviction.  We are not persuaded.

¶ 42    We assumed one error in the prosecutor's closing argument, concluding that it was not plain, and identified one instructional error that was also not plain.  In light of the strong evidence of Archuleta's guilt, we are not persuaded that the cumulative effect of these errors deprived him of a fair trial.  *See Howard-Walker v. People*, 2019 CO 69, ¶ 33.

## VI.    Disposition

¶ 43    We affirm the judgment of conviction.

JUDGE YUN concurs.

JUDGE TAUBMAN dissents.

JUDGE TAUBMAN, dissenting.

¶ 44    "Didn't have to punch, didn't have to kick, didn't have to stab, didn't have to shoot."  With this refrain, the prosecution repeatedly argued in closing that defendant, Phillip Archuleta, could be convicted of second degree assault without the actual application of physical force.  In doing so, the prosecution "eviscerated a key legal element" and contravened Colorado Supreme Court precedent. *People v. McBride*, 228 P.3d 216, 225 (Colo. App. 2009).  Rather than applying the evidence to the statute, the prosecutor sought to make the statute fit the evidence.  This was a "foul" blow that undermined the fundamental fairness of the trial.  *Berger v. United States*, 295 U.S. 78, 88 (1935).  In my view, this error was plainly improper and casts doubt on the reliability of the conviction.  I would therefore reverse because the prosecutor's substantial misstatements constituted plain error.[1]

¶ 45    I agree that there is sufficient evidence to support the jury's finding that Archuleta applied physical force, but not for the

---

[1] Because I would reverse, I do not address cumulative error.

20

reasons stated by the majority. In my view, the security footage is ambiguous and subject to multiple interpretations.

¶ 46    For these reasons, I respectfully dissent.

## I.    Prosecutorial Misconduct

¶ 47    Appropriate prosecutorial advocacy has limits. While prosecutors are "free to strike hard blows," they are "not at liberty to strike foul ones." *Domingo-Gomez v. People*, 125 P.3d 1043, 1048 (Colo. 2005) (quoting *Wilson v. People*, 743 P.2d 415, 418 (Colo. 1987), in turn quoting *Berger*, 295 U.S. at 88). Although prosecutors may use every legitimate means to bring about a just conviction, they may not use improper methods designed to obtain an unjust result. *People v. Buckner*, 2022 COA 14, ¶ 19, 509 P.3d 452, 458. Accordingly, prosecutors have a "fundamental duty" to avoid comments that could mislead the jury. *McBride*, 228 P.3d at 221. As relevant here, prosecutors cannot misstate the law or distort key elements of the charged offense. *Id.* at 224.

¶ 48    Second degree assault requires that a defendant "applies physical force" against the victim. § 18-3-203(1)(f), C.R.S. 2025. The statute does not require "the infliction of either injury or pain," nor does it specify "the magnitude of the force which is proscribed."

*People v. Schoondermark*, 699 P.2d 411, 414 (Colo. 1985). The statute does require, however, "the application of force rather than a mere attempt to apply force." *Id.* at 415.

### A. Distortion of the Physical Force Element

¶ 49 Throughout closing and rebuttal, the prosecutor repeatedly emphasized to the jury that the application of physical force did not require actual physical contact:

(1) "Swinging closed fists, landing or not, that's violent. Funny story: Those elements didn't say any lack of punch. Didn't say that had to be (indiscernible). Knowingly and violently. If closing your fist and swing[ing] on an officer isn't violent, that's a determination you'll have to make."

(2) "The man has to raise his arm, ball his fist, not follow directives and swing punches."

(3) "This is a charge against Mr. Archuleta. Did he knowingly and violently act towards a member of staff? That's it. Didn't have to punch, didn't have to kick, didn't have to stab, didn't have to shoot. He had to

22

knowingly and violently act towards a member of staff. It's very not specific that the defense seems to argue."

(4) "Did he knowingly and violently while in custody, confined to the detention facility, do what he shouldn't have done against a staff member, any staff member?"

¶ 50   By arguing during closing that "[s]winging closed fists, landing or not," was sufficient to convict, the prosecutor misstated the law. The prosecutor's statements during rebuttal further misled the jury. By arguing in rebuttal that Archuleta "[d]idn't have to punch, didn't have to kick, didn't have to stab, didn't have to shoot," but only had to "do what he shouldn't have done against a staff member," the prosecutor effectively eliminated the application of physical force element from the charged crime.

¶ 51   Aside from these erroneous statements, the prosecutor said nothing about the application of physical force in closing or rebuttal that could have corrected the jury's understanding of the element. Taken as a whole, the prosecutor's arguments suggested to the jury that second degree assault required only "a mere attempt to apply force," *Schoondermark*, 699 P.2d at 415 — "an obvious

misstatement" of the physical force element, which was a "central focus of this trial." *McBride*, 228 P.3d at 225.

¶ 52 While it is possible the prosecutor intended these statements to reference the "violently" element of second degree assault, that does not ameliorate their prejudicial impact. Even according the prosecution the benefit of the doubt, these remarks were not "ambiguous" or "simply inartful" — the misstatements elided a statutory requirement and therefore misled the jury. *People v. Samson*, 2012 COA 167, ¶ 30, 302 P.3d 311, 317.

¶ 53 A prosecutor may not misstate the law. *People v. Payne*, 2019 COA 167, ¶ 46, 461 P.3d 630, 642. The prosecutor's final statements to the jury in closing and rebuttal arguments did exactly that. In my view, this was plainly improper.

### B. Plain Error

¶ 54 Because Archuleta's counsel did not object at trial, reversal is not warranted in the absence of plain error. *See Buckner*, ¶ 43, 509 P.3d at 461. Plain error must be both obvious and substantial. *Id.* For an error to be obvious, it must contravene a clear statutory command, a well-settled legal principle, or Colorado case law. *Id.* An error is substantial if it "so undermine[s] the fundamental

fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Id.*

¶ 55 While prosecutorial misconduct during closing argument rarely amounts to plain error, some misconduct is so flagrantly, glaringly, or tremendously improper that reversal is warranted. *Domingo-Gomez,* 125 P.3d at 1053; *see, e.g., Wend v. People,* 235 P.3d 1089, 1099 (Colo. 2010); *Wilson,* 743 P.2d at 421; *Buckner,* ¶ 55, 509 P.3d at 463; *People v. Koper,* 2018 COA 137, ¶ 50, 488 P.3d 409, 418; *People v. Nardine,* 2016 COA 85, ¶ 66, 409 P.3d 441, 454; *McBride,* 228 P.3d at 226; *People v. Walters,* 148 P.3d 331, 337 (Colo. App. 2006). In my view, this is one of those cases; although reversal based on prosecutorial misconduct during closing argument does not occur frequently, these cases demonstrate that such prejudicial misconduct may warrant reversal in appropriate cases.

¶ 56 The error here was obvious. The prosecutor's comments "eviscerated a key legal element" of second degree assault by suggesting that the application of physical force was unnecessary. *McBride,* 228 P.3d at 225. This violated section 18-3-203(1)(f) and *Schoondermark*'s holding that attempted physical force is

insufficient under the statute. The error was therefore obvious because it contravened "a clear statutory command." *Buckner*, ¶ 43, 509 P.3d at 461.

¶ 57 The error was also substantial. *See id.* The evidence against Archuleta was "not overwhelming." *Id.* at ¶ 48, 509 P.3d at 462; *see Walters*, 148 P.3d at 337. At trial, the prosecution only presented two witnesses. The first introduced the surveillance video. Officer Zamora was the other witness. Although three corrections officers were involved in the incident — and at least a dozen inmates were on the floor when it happened — Officer Zamora provided the only eyewitness testimony. Notably, on cross-examination, he recanted his testimony that he saw "Mr. Van Camp punched in the face" when confronted with his report written on the day of the incident. Officer Zamora ultimately admitted that Archuleta only "attempted" to punch Officer Stephen Van Camp, testifying, "I didn't see him land the punch."

¶ 58 Therefore, the only affirmative evidence of Archuleta's guilt was the surveillance video itself. However, this video is subject to at least three different interpretations. According to Archuleta, the video shows him attempting to punch Van Camp but never making

contact.  According to the People, the video shows that Archuleta grabbed Van Camp around the shoulders and torso, punched him, and then pushed Van Camp into a trash can.  According to the majority, the video shows that Archuleta swung at Van Camp with a closed fist twice, tussled with him, and then pushed Van Camp into a trash can.  Meanwhile, the prosecutor's closing arguments relied on the attempted punch and never asserted that Archuleta pushed Van Camp into the trash can.  These differing interpretations suggest that the video is ambiguous.

¶ 59    In my view, it is not apparent from the video that Archuleta ever punched or pushed Van Camp.  The portion of the video in which Archuleta is close enough to inflict physical force on Van Camp is less than ten seconds, during which a flurry of movement makes it difficult to follow, especially due to the grainy, stop-motion quality of the video.  The jury asked to watch the video "closer and then a second time in slow motion" during deliberations, suggesting it found the footage ambiguous.  The court denied that request, only permitting the jury to watch the video again once at its normal speed.  Because the jury could not slow down or pause the video, I do not believe it is appropriate for us to do so either.  *See Auman v.*

*People*, 109 P.3d 647, 666 (Colo. 2005) ("The plain error standard of review requires us to focus on the quantum and certainty of evidence *presented at trial* . . . ." (emphasis added)).  Viewing the video at full speed without pause, it is unclear whether Archuleta ever applied violent physical force against Van Camp.

¶ 60     Likewise, the video does not indicate that Archuleta applied any other form of violent physical force against Van Camp.  At one point, Archuleta put his arms around Van Camp after Van Camp grabbed him around the waist.  While this may constitute physical force, it does not appear violent, as required under section 18-3-203(1)(f).  *See Schoondermark*, 699 P.2d at 416 (defining the violent application of physical force as the "abnormally sudden and intense use of physical strength against a peace officer").  Unlike in *Schoondermark*, Archuleta does not concede that putting his arms around Van Camp was violent.  *Id.* at 414.  Nor did the prosecutor argue that this conduct was violent or constituted the application of physical force.  *See In re Custody of C.C.R.S.*, 872 P.2d 1337, 1343 (Colo. App. 1993) ("[A]ppellate courts will not consider issues, arguments, or theories not previously presented in trial proceedings."), *aff'd*, 892 P.2d 246 (Colo. 1995).  In closing, the

28

prosecutor relied solely on the alleged attempted punch to establish knowing and violent physical force and made no argument that Archuleta's act of putting his arms around Van Camp satisfied that standard.

¶ 61    Therefore, because the video was the *only* evidence against Archuleta, and it was ambiguous, the evidence against Archuleta was not overwhelming.  *See Buckner*, ¶ 53, 509 P.3d at 463.  When the evidence is close, "the prosecutor's argument assumes greater significance and weighs more heavily on the jury's decision than it might otherwise."  *Id.*  This is especially true when the prosecutor's improper argument concerns the precise issue where the evidence is weakest.  *McBride*, 228 P.3d at 226 (finding plain error where the prosecutor distorted the element that was the "closest issue" at trial when "the proof of this element was not so airtight as to eliminate any possible prejudice").  Indeed, whether Archuleta applied physical force was the focus of Officer Zamora's testimony and the theme of each party's closing argument.  The prosecutor's distortion of the physical force element went directly to this close evidentiary issue, amplifying its prejudice.  *See id.*

¶ 62    Moreover, the district court did not provide the jury with any instruction to minimize the impact of the improper statements. While the district court correctly instructed the jury that second degree assault requires the application of physical force, it did not define "physical force." § 18-3-203(1)(f).  While ordinarily, "[p]ersons of reasonable intelligence" would understand that physical force requires actual physical contact, *Schoondermark*, 699 P.2d at 416, the prosecutor provided the jury with an erroneous definition that supplanted common sense.  *Cf. Payne*, ¶ 18, 461 P.3d at 636 (trial court need not provide a definitional instruction unless the jury indicates "confusion about the meaning of a statutory term").

¶ 63    The district court did not provide a curative instruction to ameliorate the prejudicial impact of the prosecution's misstatements of the law.  *See Wend*, 235 P.3d at 1098; *Harris v. People*, 888 P.2d 259, 268-69 (Colo. 1995) (finding plain error where "there was no admonition from the judge to the jury . . . which could have negated or counterbalanced the improper remarks"). Although the court instructed the jury that it was the court's role alone to decide the applicable rules of law, "[i]t would defy common

30

sense . . . to believe that this instruction was sufficient to neutralize the impact of the prosecutor's improper remarks during summation." *Wilson*, 743 P.2d at 420-21.

¶ 64    In addition, the frequency and timing of the improper statements exacerbated their prejudicial effect. The prosecutor "continually stressed the theme" that the application of physical force did not require physical contact during closing argument and especially during rebuttal closing argument. *Wend*, 235 P.3d at 1098. The "pervasive" nature of the misconduct "casts serious doubt on the reliability of the verdict." *Nardine*, ¶ 66, 409 P.3d at 454; *see Harris*, 888 P.2d at 268 (finding plain error when "the prosecutor's comments were repeated over the course of the entire closing argument").

¶ 65    Further, the timing of the prosecutor's most prejudicial remarks — delivered during rebuttal — likely exacerbated their impact. *See Buckner*, ¶ 54, 509 P.3d at 463. Because these remarks were made in rebuttal, defense counsel had no opportunity to respond. Additionally, "[r]ebuttal closing is the last thing a juror hears from counsel before deliberating, and it is therefore foremost in their thoughts." *Domingo-Gomez*, 125 P.3d at 1052.

¶ 66    Finally, the trial itself lasted only two days, with all the evidence presented in a single afternoon.  The brevity of the trial meant that the prosecutorial misconduct comprised a larger proportion of the overall proceedings, amplifying its effect.  *Cf. People v. Vialpando*, 2022 CO 28, ¶ 33, 512 P.3d 106, 114 ("[A] shorter trial may compound the impact of any errors . . . .").

¶ 67    Therefore, because the verdict hinged on whether Archuleta applied physical force, the prosecutor's obvious misstatement of this element undermined the fundamental fairness of the trial and cast doubt on the reliability of the jury's verdict.  Accordingly, I would reverse Archuleta's conviction.

## II.    Sufficiency of the Evidence of Physical Force

¶ 68    The evidence sufficed to support the jury's finding that Archuleta applied physical force against Van Camp.  However, I do not believe that the video definitively shows that Archuleta punched or pushed Van Camp.  Rather, as I explained above, the evidence was close.  Further, I disagree with the majority's sufficiency analysis for two reasons.

¶ 69    First, the majority necessarily relies on the video, the only inculpatory evidence against Archuleta.  However, in my view, its

reliance on *People v. Ramadon,* 2013 CO 68, ¶ 21, 314 P.3d 836, 843, is misplaced. There, the supreme court reviewed a video in addressing whether the defendant's statements to a police officer in a criminal case should be suppressed. The court did not note any differences in the parties' views regarding the interpretation of the video. Here, in contrast, as noted above, the parties and the majority present three distinct interpretations of the video, making reliance on it of uncertain value.

¶ 70    Second, the majority focuses on a freeze-frame of the video to support its conclusion that Archuleta pushed Van Camp into a trash can. However, as noted above, the district court denied the jury's request to review the video in slow motion. I do not think our analysis of the sufficiency of the evidence should be predicated on a view of the incident that was denied to the jury. Indeed, viewing the video in real time, I think it is difficult to determine exactly what happened, especially since the incident occurred in just a matter of seconds. Absent other evidence against Archuleta, I believe there was barely sufficient evidence to support his conviction.

¶ 71    To illustrate, the surveillance video shows Archuleta swinging his arms at Van Camp before Van Camp grabbed Archuleta around

the waist. A brief scuffle ensued, during which Archuleta and Van Camp grappled with each other for seconds. The scuffle ended with Van Camp falling to the floor.

¶ 72    While the video is ambiguous, a reasonable jury, viewing this evidence in the light most favorable to the prosecution, could infer that Archuleta applied physical force against Van Camp by participating in a scuffle that resulted in Van Camp falling to the ground. *Cf. Schoondermark*, 699 P.2d at 414-15 (finding sufficient evidence to support a defendant's conviction of second degree assault where the defendant "struggled violently" against the officers who restrained him, while noting that the defendant basically conceded his conduct was violent).

¶ 73    Accordingly, in my view, Archuleta's conviction should be reversed and the case remanded for a new trial.